359 Mass. 211                                      211

Commissioners of Civil Service *v.* Municipal Court of the City of Boston.

Commissioners of Civil Service & another *vs.* Municipal
Court of the City of Boston & another.

Suffolk.   February 4, 1971. — April 7, 1971.

Present: Tauro, C.J., Spalding, Cutter, Spiegel, & Braucher, JJ.

*Civil Service. District Court,* Review respecting civil service.

Restatement of the scope of a review by a judge of a Municipal Court upon a petition under G. L. c. 31, § 45, as amended through St. 1955, c. 407, § 2. [214–215]

At a hearing before the Civil Service Commission relative to the discharge of a police officer by the appointing authority, credible evidence respecting an altercation between that officer when he was off duty and a police officer in uniform and on duty on a street "in full view of the public," and respecting a renewal of the altercation at a police station, resulting in severe injuries to the uniformed officer, supported the commission's detailed subsidiary findings and its conclusion therefrom that the discharged officer had been guilty of conduct unbecoming a police officer and its decision affirming the discharge [215]; and on the record before this court in a certiorari proceeding to quash a decision by a judge of a Municipal Court upon a petition for review by the discharged officer under G. L. c. 31, § 45, as amended, that the actions of the appointing authority and of the commission were not "justified," no basis was seen to support the judge's decision, which was made without any subsidiary findings or statement of reasons, and it was ordered that his decision be set aside and that the commission's decision be affirmed [216–217].

Petition for a writ of certiorari filed in the Supreme Judicial Court for the county of Suffolk on April 28, 1970.

The case was reserved and reported by *Reardon,* J., without decision.

*Walter H. Mayo, III,* Assistant Attorney General, for the Commissioners of Civil Service.

*Henry N. Frenette, Jr.,* for the Mayor of Brockton.

*David C. Hawkins,* Special Assistant Attorney General, for the Municipal Court of the City of Boston.

*Herbert D. Lewis* (*Michael D. Zibel* with him) for Robert E. Raynard.

CUTTER, J. This petition in the county court for a writ of certiorari seeks to quash a decision of a judge of the Municipal Court of the City of Boston reviewing action of the Civil Service Commission (the commission). The commission, after hearing, had affirmed action of the appointing authority, the mayor of Brockton, discharging Robert E. Raynard, a police officer. The Municipal Court judge concluded that the commission's action was not "justified."

A single justice reserved and reported the case, without decision, for the determination of the full court upon the pleadings and exhibits in the Municipal Court. These include the record before the commission, and certified copies of Raynard's acquittal on two criminal charges of assault and battery upon another officer. It was stipulated that the Municipal Court judge (in addition to receiving the record before the commission) heard testimony from Robert Raynard and two other witnesses (called by him before the commission), and that their testimony "did not differ from the testimony given by them before the [h]earing [o]fficer of the [c]ommission."

The evidence (some of it conflicting) before the commission showed at least the following general facts about which there was little or no dispute. About 3:30 P.M. on April 21, 1966, Officer Robert Raynard, off duty, was operating a motor vehicle through a street intersection at which Officer John L. Clark was on duty directing traffic. The vehicle either made contact with Clark or came very close to doing so. Clark directed Raynard to pull his vehicle to the side of the street. He did so, left his vehicle, and approached Clark. A struggle between the two officers ensued "in full view of the public." Several other officers intervened to restore order. A further altercation between the two officers occurred at the police station, where other officers again intervened. Clark was injured. There had been

ill feeling between the two officers. Raynard was booked on charges of assault and battery.[1]

On April 22, 1966, Raynard was notified of his suspension from the police force for conduct unbecoming a police officer and violation of regulations. On April 29, 1966, after hearing, the mayor (the appointing officer) found there was "just cause" for the suspension. On May 20, 1966, Raynard was discharged. After hearing before a hearing officer of the commission (of which a 274 page transcript is before us), the commission on August 17, 1966, adopted the hearing officer's findings, and, as has been noted, affirmed the action of the mayor in suspending and discharging Raynard.

1. Review of the commission's decision took place in the Municipal Court under G. L. c. 31, § 45, as amended through St. 1955, c. 407, § 2, which reads: "Within thirty days after action by the commission on a hearing provided for in section forty-three, the person who was discharged . . . may, if said action was affirmed by the commission, bring a petition in the municipal court of the city of Boston . . . praying that the action of the appointing authority and of the commission in discharging . . . him . . . may be reviewed by the court, and, after . . . notice . . . the court . . . *shall hear witnesses, review such action, and determine whether . . . upon all the evidence such action was justified. If the court finds that such action was justified the action of the appointing authority and of the commission shall be affirmed; otherwise they shall be reversed and the petitioner shall be reinstated . . .* without loss of compensation. The decision of the court shall be final and conclusive upon the parties . . ." (emphasis supplied).

The section had been considerably revised by St. 1945, c. 667, § 2, which inserted the italicized language, quoted above from the 1955 version of the statute, in place of earlier language in St. 1934, c. 249, § 2, which read "the court . . .

---

[1] Raynard appealed to the Superior Court from his conviction in the District Court on the assault and battery charges. On October 8, 1968, a jury found him not guilty. These findings, of course, are not conclusive in the present proceeding. See *Chief of the Fire Dept. of Boston* v. *Sutherland Apartments, Inc.* 346 Mass. 685, 690.

shall review such action, hear the witnesses, and shall affirm the decision of the . . . board unless it shall appear that it was made without proper cause or in bad faith, in which case said decision shall be reversed." [2]

The scope of review open to the Municipal Court judge is defined in *Sullivan* v. *Municipal Court of the Roxbury Dist.* 322 Mass. 566, 572–573, where it was said by Chief Justice Qua: "The scope under a statute of this type of a judicial review to determine whether the action of an administrative officer in discharging . . . an . . . employee in the classified service was 'justified' has been settled by a series of decisions. The difference between a review and 'a retrial of the case . . .' [has been] pointed out . . . [citing *Selectmen of Wakefield* v. *Judge of First Dist. Court of E. Middlesex*, 262 Mass. 477, 482]. 'Review' indicates 'a re-examination of a proceeding . . . for the purpose of preventing a result which appears not to be based upon the exercise of an unbiased and reasonable judgment. It does not import a reversal of the earlier decision honestly made upon evidence which appears to an unprejudiced mind sufficient to warrant the decision made although of a character respecting the weight of which two impartial minds might well reach different conclusions, and upon which the reviewing magistrate, if trying the whole issue afresh, might make a different finding.' . . . [citing cases]. 'Justified' in connection with 'review' means 'done upon adequate reasons sufficiently supported by credible evidence, when weighed by an unprejudiced mind, guided by common sense and by correct rules of law.' [citing the *Selectmen of Wakefield* case, 262 Mass. 477, 482, *supra*]."

This statement of the law has continued to prevail under § 45 as amended in 1955.[3] See *Mayor of Beverly* v. *First Dist.*

---

[2] Section 45 has been revised, in form at least, by St. 1970, c. 711. See 1970 House Doc. Nos. 1264, 2933, 5128 (Appendix E). Statute 1955, c. 407, § 2, made no change in the pertinent language of § 45, as amended by St. 1945, c. 667, § 2. The legislative history of the 1945 statute sheds little light on the reasons for the amendments then made. See 1945 House Doc. No. 1675, pp. 5, 28–29.

[3] We, of course, need not now consider what effect, if any, the 1970 statute (fn. 2) may have on the scope of review outlined in the earlier decisions.

*Court of Essex*, 327 Mass. 56, 60–61. See also *McCormack* v. *Municipal Court of Brookline*, 355 Mass. 786. The review, in accordance with the *Sullivan* case is more limited than the de novo hearing before the commission. See *Luacaw* v. *Fire Commr. of Boston*, 350 Mass. 326, 330.

2. The commission's hearing officer, in addition to finding the essentially undisputed facts already outlined, made the following specific findings. Robert Raynard's vehicle "made contact with . . . [Clark's] right leg and hand." Raynard "approached . . . Clark with the . . . intent to assault him." He did assault Clark at the street intersection "and caused a breach of the peace," as a consequence of which members of the public "observed . . . two police officers entangled with one another on the street." Raynard's unattended vehicle "rolled into another . . . vehicle causing damage." As a result of Raynard's attack "Clark was kicked in the abdomen, bitten . . . struck . . . and had his . . . eye gouged. His uniform was torn and in . . . disarray." At the police station, Raynard went "upstairs to . . . where . . . Clark was standing" and "directed vulgar language and threats at . . . Clark and again assaulted him." Clark was taken to the hospital and was "absent from duty from the time of the incident . . . as a result of the injuries . . . at least to May 23, 1966." There were "no compelling and convincing extenuating circumstances . . . presented . . . in mitigation of" Raynard's behavior. Clark "in no way caused or contributed to the occurrences." The hearing officer concluded that Raynard was guilty of conduct unbecoming a police officer in both assaults and had violated police department regulations.

There was ample evidence before the hearing officer to support his subsidiary findings which justified his conclusions. Examination of that evidence before the hearing officer, which supported his findings, does not enable us to say that it was incredible or unworthy of acceptance. There is no indication that the hearing officer had a prejudiced mind or lacked common sense, or that he was not guided by correct rules of law. It is not material that, on the con-

flicting evidence (concerning which of the two officers started the fight on the street), "the reviewing magistrate . . . trying the whole issue afresh, might make a different finding." See *Murray* v. *Justices of the Municipal Court of the City of Boston*, 233 Mass. 186, 189.

The record does not show why witnesses, favorable to Clark's version of the affrays, were not heard by the judge in addition to the three witnesses heard by him. One of the witnesses, who testified before the judge, was Robert Raynard, the discharged employee. Roy E. Raynard, also a police officer, was Robert Raynard's brother. Watkins, a high school student, observed the street incident. He testified that he saw Clark's right hand (while directing traffic) "go in the window of . . . Raynard's car" and later saw the two officers struggle and fall to the ground. The trial judge failed to recognize (a) that the hearing officer was not required to believe this testimony, and (b) that, even if the hearing officer had accepted Watkins's testimony, he would still have been justified in concluding that it constituted conduct unbecoming a police officer for Raynard, not on duty, to engage in a public altercation with another police officer (in uniform and on duty) and to engage in a renewal of that altercation after it had once been stopped.

The Municipal Court judge made no subsidiary findings and stated no reasons for his conclusion "that the action of the appointing authority in discharging the petitioner and of the . . . [c]ommission . . . was not justified." The whole record before the hearing officer has been examined, including the testimony of the three witnesses (in terms similar to their testimony later also heard by the judge). We apply the principles of the *Sullivan* case, 322 Mass. 566, 572–573, *supra*. Doing so, we perceive no sufficient basis for the judge's conclusion. The absence of such a basis amounts to error of law. See *Mayor of Beverly* v. *First Dist. Court of Essex*, 327 Mass. 56, 58–60. See also *MacKenzie* v. *School Comm. of Ipswich*, 342 Mass. 612, 615. The commission and the hearing officer were justified in giving sub-

stantial credence to the evidence before the hearing officer. Their action should not have been reversed.

3. Judgment is to enter in the county court setting aside the decision of the Municipal Court and directing that the decision of the Civil Service Commission be affirmed.

*So ordered.*