COMMISSIONERS OF CIVIL SERVICE & another *vs.*
MUNICIPAL COURT OF THE BRIGHTON DISTRICT
& another.[1]

Suffolk.   September 16, 1975. — December 4, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Civil Service. Police. District Court,* Review respecting civil service. *Jurisdiction,* Proceeding for judicial review. *Administrative Board. Res Judicata.*

At a hearing under G. L. c. 31, § 43 (*b*), before the Civil Service Commission relative to the discharge of a police officer by the appointing authority, substantial evidence that the officer was the driver of a car from which a passenger with a criminal record alighted and made a futile attempt to cash a forged money order at a bank and then retreated to the car and was immediately driven away by the officer supported the commission's subsidiary findings and its decision that the discharge was "justified." [168-169]

Upon a petition for review under G. L. c. 31, § 45, as amended through St. 1970, c. 711, of a decision of the Civil Service Commission sustaining the discharge of a police officer, the District Court's reversal of the decision was not warranted by supposed error in the commission's handling of the transcript of testimony of a witness at a criminal trial of the officer where it was not shown that the commission in fact accepted and gave weight to the transcript. [169-173]

Upon an indictment of a police officer and his suspension by the appointing authority pursuant to G. L. c. 30, § 59, as amended,

---

[1] The police commissioner of the city of Boston is also a petitioner, and John A. Patuto is also a respondent.

the authority was not required immediately to bring charges against the officer but properly awaited the outcome of the criminal prosecution and upon his acquittal ordered him reinstated and gave him a hearing under c. 31, § 43 (*a*), on a complaint for alleged conduct unbecoming an officer [173]; the letter announcing the suspension proceeding did not bind the authority not to press for the officer's discharge if acquitted under the indictment [173].

Acquittal of a police officer under an indictment for conspiracy and forging and uttering money orders did not preclude the Civil Service Commission at a subsequent hearing under G. L. c. 31, § 43 (*b*), from finding him guilty of "conduct unbecoming" an officer on charges of association with persons of known bad character while such persons were uttering forged money orders. [173-174]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on September 14, 1972.

The case was heard by *Braucher, J.*

*Michael R. Pizziferri (Joseph A. Todisco* with him) for the respondents.

*Alan K. Posner,* Assistant Attorney General, for the petitioners.

KAPLAN, J. The case is here on exceptions, allowed and treated as a notice of appeal (see Mass. R. Civ. P. 1A, par. 7, 365 Mass. 731 [1974], Mass. R. A. P. 1A, 365 Mass. 845 [1974]), to a judgment of a single justice of this court which directed that certiorari issue to set aside a decision of the Municipal Court of the Brighton District and to affirm a decision of the Civil Service Commission dismissing a Boston patrolman from the service.[2] Agreeing with the single justice, we affirm his judgment.

To recount the proceedings from the start: In April, 1970, Patrolman John A. Patuto (hereafter called the respondent) was indicted in a United States District Court on charges of conspiracy to forge and utter United States postal money orders and of forging and uttering the same, to which he pleaded not guilty. The Boston police commissioner after a brief hearing suspended the re-

[2]The single justice overruled a demurrer and denied motions to dismiss addressed to the petition for certiorari. These rulings were correct and need not be rehearsed here.

spondent from his job "[o]n the basis of G. L. c. 30 Section 59 and the policies it represents"[3] to await the outcome of the criminal prosecution. When the respondent was acquitted by jury verdict, the police commissioner ordered the respondent reinstated, the order becoming effective on December 30, 1970.

On the same day, the police commissioner, following the procedure of G. L. c. 31, § 43, gave the respondent notice of a hearing to determine what action should be taken on a complaint against him for alleged conduct unbecoming an officer in violation of departmental regulations. The two specifications, identical except for a difference of the names mentioned, charged that the respondent about 2 P.M., Thursday, February 20, 1969, associated with a person of known bad character while that person — Peter D. Dionne in one specification, Steven L. Kervin in the other — was engaged in committing the crime of uttering forged money orders at the Bay State Merchants National Bank in Lawrence, Massachusetts. At the conclusion of the hearing which followed, the police commissioner found by a preponderance of the evidence that the respondent was guilty of the charge made in the complaint, and discharged the respondent from his post as patrolman effective January 8, 1971.

The respondent exercised his statutory right (G. L. c. 31, § 43 [b]) to demand a hearing by the Civil Service Commission. This took place before a hearing officer of the commission who, on the basis of his findings of subsidiary facts, recommended that the decision of the police commissioner be upheld.[4] The commission, in turn,

---

[3] General Laws c. 30, § 59, in terms deals with such suspensions of officers or employees of the Commonwealth or of any department, board, commission, or agency thereof, or of any authority created by the General Court.

[4] In the commission proceeding the respondent moved at the outset for relief under G. L. c. 31, § 46A, second par., on the ground that the procedures of § 43 had not been followed. The application failed, and correctly so. It need not be described in detail.

adopted the hearing officer's findings and, accepting his recommendation, held that the action of the police commissioner in discharging the respondent was "justified."

Thereupon the respondent filed in the Municipal Court his petition under G. L. c. 31, § 45, to review the action of the Civil Service Commission. At the threshold the respondent was challenged by a plea in bar praying dismissal of the petition by reason of its late service. Notification of the commission's decision had reached the respondent on January 24, 1972, and his petition for review was filed in the Municipal Court on February 23, 1972, within the thirty days allowed by G. L. c. 31, § 45; but a copy of the petition, which according to § 45 should be served on the commission and the appointing authority within the same thirty days, had in fact not been served upon them until March 22, 1972. The judge overruled the plea.

Coming to the merits, the case presented to the judge consisted simply of the record as made before the commission; this indeed is the contemplated usual situation on judicial review under § 45.[5] The judge found, as he thought, a number of errors infecting the commission's decision, among them the sustaining of the discharge of the respondent on inadequate proof. The judge accordingly reversed the commission and ordered the respondent reinstated without loss of pay.

On certiorari, the single justice did not examine the correctness of the ruling on the plea in bar. Addressing himself to the merits, he said, "A review of the record indicates that there was sufficient evidence to warrant the Civil Service Commission in reaching the result which it did." Thus the judge of the Municipal Court had himself committed legal error (see *Commissioners of Civil Serv.* v. *Municipal Court of the City of Boston,* 359 Mass. 211, 216 [1971]), and the writ therefore issued.

---

[5] See § 45, third-fifth pars.

We, too, prefer to reach the substantial merits, and therefore we pass over briefly the question raised by the plea in bar. General Laws c. 31, § 45, is modeled in part on provisions of the State Administrative Procedure Act (see G. L. c. 30A, § 14). Chapter 31, § 45, like c. 30A, § 14 (1), requires that the petition for judicial review be filed in the appropriate court within thirty days after the agency decision and that the agency (under G. L. c. 31, § 45, both the commission and the appointing authority) "shall, within the same period, be served" with a copy of the petition. In *Cohen* v. *Board of Registration in Pharmacy*, 347 Mass. 96, 98-99 (1964), a case under the State Administrative Procedure Act, we intimated that filing of the petition in court beyond the time allowed by c. 30A, § 14 (1), would be fatal; we had no occasion to say whether the same result would follow from late service of the petition on the agency, but held that exceeding a separate time limit set in c. 30A, § 14 (2), for service of the papers on interveners, was not a sufficient ground for dismissing the petition, at least on the facts of the particular case. The question whether late service of the § 45 petition — here a delay of about a month — is to be assimilated to its late filing in court, with fatal results, or rather to the late service on the interveners as in the *Cohen* case, with results that might or might not be fatal, we leave to another day, noting that the general question of the forfeiture of appeals through failure of parties to follow the prescribed procedure for taking and perfecting them has been recently considered in *Schulte* v. *Director of the Div. of Employment Security*, *ante*, 74 (1975).

As to the merits, we think the testimony given by witnesses before the hearing officer supported the subsidiary findings made by that officer and those findings justified the recommendation and decision to discharge. The findings rest on substantial evidence from witnesses to the following effect. The respondent on February 20, 1969, at about 2 P.M., drove a car to the bank in

Lawrence. He was identified through eyewitness testimony as the driver; the car was registered to a company owned by his family and he customarily used it. Kervin was an occupant of the car. Kervin left the car and made an attempt to cash a forged money order. The attempt failing, he retreated to the car and was immediately driven away by the respondent. It appeared, though with less certainty, that Dionne was a third occupant of the car. The respondent had encountered Kervin and Dionne on his rounds as a policeman in downtown Boston well before the incident of February 20. These men evidently had criminal records and under the prosecution for forging and uttering postal money orders admitted their guilt of such transactions in Massachusetts. The respondent's effort to prove as an alibi that he was at home during the relevant hours on February 20 did much to harm him; the hearing officer was well warranted in disbelieving the testimony which came largely from the respondent's mother and sister and a friendly neighbor.

It may be surmised that the judge of the Municipal Court misconceived his role in a § 45 review of a decision of the commission. Section 45, as amended through St. 1970, c. 711, makes clear by its express terms what the cases had, in effect, earlier established:[6] to reverse the commission's decision on the facts, the judge must find it "unsupported by substantial evidence" (§ 45 [e]). No such finding could properly be made here. The judge may mistakenly have thought himself free to reevaluate

---

[6] See *Haywood* v. *Municipal Court of the City of Boston,* 359 Mass. 760 (1971); *Selectmen of Dartmouth* v. *Third Dist. Court of Bristol,* 359 Mass. 400 (1971); *Commissioners of Civil Serv.* v. *Municipal Court of the City of Boston,* 359 Mass. 211 (1971), which cites and relies on the statement of Qua, C.J., in *Sullivan* v. *Municipal Court of the Roxbury Dist.,* 322 Mass. 566, 572-573 (1948); *Commissioners of Civil Serv.* v. *Municipal Court of the City of Boston, ante,* 84, 88 (1975). Cf. *Commissioner of Pub. Safety* v. *Treadway,* 368 Mass. 155, 159 & n.6 (1975).

the testimony, although even on such a basis it is not easy to see how he could have come out as he did.

The judge thought there was error in the hearing officer's handling of a transcript of Dionne's testimony at the criminal trial offered in evidence by the police commissioner and tending to show that Dionne was in the car with the respondent at the bank in Lawrence. If strict rules of evidence were applied, this former testimony might well have been excluded as inadmissible hearsay. Although counsel for the respondent had apparently cross-examined Dionne at the trial, and the testimony bore on a point relevant to the discharge proceeding, the "issues" in the discharge proceeding might diverge from those in the criminal prosecution, the parties in the two matters were not the same, and the "unavailability" of Dionne was sought to be established only through a statement by counsel for the police commissioner that the Federal authorities, who held Dionne, were unwilling to divulge his whereabouts. See W.B. Leach & P.J. Liacos, Massachusetts Evidence 192-193 (4th ed. 1967); 1 G. Mottla, Proof of Cases in Massachusetts §§ 241-244 (2d ed. 1966). Strict rules of evidence did not govern at the hearing. Yet it is conceivable that in egregious circumstances a trier's receiving and giving weight to such hearsay might be held a mistaken exercise of his discretion. Here, however, we are relieved of any problem because it is not shown that the hearing officer in fact accepted and gave weight to the Dionne transcript. He took it de bene and said he would rule on it later; so far as appears, he did not make a distinct ruling, but he indicated that his subsidiary findings were based on the testimony of those (naming them) who had appeared before him as witnesses. In any event, we think there was enough evidence before the hearing officer to justify the recommendation of discharge and to prevent reversal of the commission's decision under § 45 (e) even if all that related to Dionne

was thrown away and it is assumed he was not present in Lawrence.

Of the other reasons mentioned by the judge for setting aside the discharge, we need notice only the following, the rest being palpably without basis. It is suggested that the police commissioner was under some obligation to make the charge of conduct unbecoming an officer as soon as he became aware of the facts on which he ultimately relied, which was, so it is claimed, when he first took steps to suspend the respondent. Suspension under such a procedure as G. L. c. 30, § 59, however, is nearly automatic when an officer is indicted; there is no requirement that charges looking to separation or other punishment be then brought, and it will often make for sense and fair play to wait and see what happens under the indictment.[7]

Again it is suggested that the police commissioner, by the form of his letter to the respondent advising him of the suspension proceeding, bound himself not to press for the respondent's discharge if the respondent were acquitted after trial on the indictment. There is no reasonable foundation for this proposition.[8]

It is then suggested that the fact of the respondent's acquittal under the indictment in some way made it legally impossible for the commission to find him guilty of the departmental charge of "conduct unbecoming." The point is put in a variety of ways but, however framed, it may be answered in the words of Davis, J., in *Kowal* v. *United States*, 412 F.2d 867, 970 (Ct. Cl.

---

[7]Section 59, as amended through St. 1964, c. 528, states that the suspension shall not be used to prejudice the person involved either civilly or criminally, and that if the criminal proceedings terminate without a finding or verdict of guilty, the suspension "shall be forthwith removed" with payment for the period of suspension.

[8]The letter, following the style of § 59 (see n.7 above), said that if the criminal proceedings ended favorably to the officer, "I will remove your suspension, and reinstate you." This was not a guaranty against further charges.

1969), speaking to a case stronger for the employee than the present case because there the adversaries in the discharge and criminal proceedings were the same: "The Board [of Appeals and Review of the United States Civil Service Commission] was clearly correct that the decision in the criminal case was not binding upon it as *res judicata.* [Court's omitted footnote cites cases.] While the parties to the criminal and the removal proceedings were the same, the charges, though parallel, were not precisely on all fours and the burden of proof was different — a preponderance (or, perhaps, clear and convincing evidence)[9] in the removal proceeding, beyond a reasonable doubt in the criminal. Since only a general verdict was rendered, there is no absolute certainty as to how the jury decided specific issues of fact, and collateral estoppel in the strict sense is therefore not warranted either." Cf. *Commissioners of Civil Serv.* v. *Municipal Court of the City of Boston,* 359 Mass. 211, 213 n.1 (1971); *Chief of the Fire Dep't of Boston* v. *Sutherland Apartments, Inc.,* 346 Mass. 685, 690 (1964).

*Judgment affirmed.*

---

[9] In the present discharge proceeding the standard was that of preponderance only.