# CITY OF CAMBRIDGE *vs.* CIVIL SERVICE COMMISSION & another.[1]

No. 96-P-175.

Middlesex. June 9, 1997. - August 5, 1997.

Present: KASS, SMITH, & LAURENCE, JJ.

*Civil Service,* Decision of Civil Service Commission, Arbitrary or capricious action, Police. *Public Employment,* Police. *Police,* Hiring.

The Civil Service Commission applied an incorrect standard in concluding that an appointing authority's request to "bypass" a candidate for appointment as a police officer was "arbitrary and capricious," and where, on the record before the commission, the appointing authority sustained its burden of proving reasonable justification for its action, the commission impermissibly substituted its judgment for that of the appointing authority. [303-305]

CIVIL ACTION commenced in the Superior Court Department on June 23, 1994.

The case was heard by *Stephen E. Neel,* J.

*Birge Albright* for the City of Cambridge.

*Loretta M. Smith,* Assistant Attorney General, for the Civil Service Commission.

*Donna DeSimone Buckley* for the intervener.

KASS, J. On the basis of a competitive examination, Leslie Langston had qualified in December, 1992, for appointment as a police officer in Cambridge. The appointing authority of that city developed some adverse facts about Langston in a record check and obtained permission from the administrator of the State Department of Personnel Administration (the "Administrator") to "bypass" her in accordance with G. L. c. 31, § 27. The Civil Service Commission reversed and ordered that the city re-certify Langston. A judge of the Superior Court, who considered the case under the State Administrative Procedure Act, G. L.

---

[1]Leslie Langston, intervener.

c. 30A, § 14, concluded that the commission had acted within its authority and discretion, and affirmed the commission's decision. We reverse.

1. *Facts.* What the city's background check uncovered was that Langston, in 1984, at age 20, had admitted to firing a sawed-off shotgun within 500 feet of a residence, in violation of G. L. c. 269, § 12E. A judge of the Roxbury District Court found her guilty, imposed a $50 fine, and placed her on probation. In fact, it was Langston's boyfriend who had fired the shotgun. She had invented her role to protect the boyfriend from a likely conviction of unlawful possession of a firearm, an offense that carried a mandatory penalty of one year of incarceration. In support of that version of events, Langston fibbed to the police and to a judge of the Roxbury District Court.

Langston's father, a detective in the Boston police department, became aware of his daughter's conviction and spoke to her about it. She explained to him why she had taken responsibility for the weapon discharge, and he explained to her that she had been foolish because now she had a criminal record. He advised that she had better try to have the court record sealed. To that end, Langston came before a second judge of the Roxbury District Court, to whom she explained that her previous account had not been true and the reason for her mendacity. We do not have the benefit of a record of those proceedings but their upshot was that the judge vacated Langston's conviction and sealed her record. While thereafter not available to the public, the raw data in that record remains accessible to the police and the 1984 episode thus became known to the police commissioner of Cambridge when his department screened Langston as a candidate for appointment. As to this lingering force of sealed records, see *Commonwealth* v. *Roberts*, 39 Mass. App. Ct. 355, 356 (1995).

Five years later, Langston was the subject of a criminal complaint of assault and battery upon a woman (against whom Langston cross-complained) arising out of a domestic quarrel that involved her child and her then boyfriend. The case went to mediation, was continued, and ultimately dismissed.

2. *Administrative action.* As a result of Langston's performance in the civil service examination, the Administrator had certified to the city of Cambridge that Langston was eligible for appointment as a police officer. See G. L. c. 31, § 25. Cam-

bridge, through its city manager, requested permission from the Administrator pursuant to G. L. c. 31, § 27, not to appoint Langston, who was apparently the highest eligible candidate. This is a procedure known as a "bypass." See *Bielawski* v. *Personnel Administrator of the Div. of Personnel Admn.*, 422 Mass. 459, 460 (1996); *MacHenry* v. *Civil Serv. Commn.*, 40 Mass. App. Ct. 632, 634-635 (1996). The Administrator initially rejected the city's request. The city manager pressed the matter, urging that Langston's "willingness to lie, for personal reasons, in the very type of proceedings in which she would be constantly testifying as a police officer," and the later involvement with violence in a personal dispute made her a poor risk as a police officer. The Administrator, by letter dated February 16, 1994, concurred in the bypass.

Thereupon, Langston appealed to the Civil Service Commission under G. L. c. 31, § 2(*b*). The commission concluded that "the bypass was arbitrary and capricious," and ordered that Langston's "eligibility is to be revived." As to the shooting incident, the commission regarded it as "stale, having taken place almost ten years prior to her consideration as a police officer, when [Langston] was twenty years old." So far as the 1989 domestic violence episode was concerned, the commission "note[d] that no allegation of assault and battery was ever sustained against [Langston] and the entire dispute was satisfactorily resolved through mediation."

"Weighing against the concerns expressed by the Appointing Authority [the city manager]," the commission's decision continues, is Langston's "exemplary employment record as established by numerous and detailed letters of support from prior and current employers spanning a seven-year period." Langston had worked as a secretary, an administrative assistant, receptionist, staff assistant, and administrator, largely in medical settings such as Harvard University Health Services and Cambridge Hospital.[2] "We believe," the commission wrote in its decision, "that [Langston's] work history from 1987 to 1994 out-weighs the concerns voiced by the Appointing Authority as a result of incidents in 1984 and 1989. If any individual deserves a second chance, it is surely [Langston]."

From the commission's decision, the city took its appeal under G. L. c. 31, § 44, which provides that proceedings "shall,

---

[2]Those letters of support were received at the commission stage of proceedings, without objection by the city, which shrugged them off as irrelevant.

insofar as applicable, be governed by the provisions of [G. L. c. 30A, § 14]." G. L. c. 31, § 44, as amended by St. 1992, c. 133, § 351. The Superior Court judge who reviewed the administrative record concluded that the commission had applied the proper standard of review and that its conclusion was supported by substantial evidence. This third level of appeal followed.

3. *Correctness of legal standard applied by the commission.* For the commission to have described the bypass as arbitrary and capricious was patently mistaken. A decision is arbitrary and capricious when it lacks any rational explanation that reasonable persons might support. *Attorney Gen.* v. *Sheriff of Worcester County,* 382 Mass. 57, 62 (1980). *Howe* v. *Health Facilities Appeal Bd.,* 20 Mass. App. Ct. 531, 534 (1985). *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover,* 36 Mass. App. Ct. 124, 128-129 (1994). The city was hardly espousing a position devoid of reason when it held that a demonstrated willingness to fudge the truth in exigent circumstances was a doubtful characteristic for a police officer. Police work frequently calls upon officers to speak the truth when doing so might put in question a stop or a search or might embarrass a fellow officer. It requires no strength of character to speak the truth when it does not hurt.

The commission, however, was not bound to declare that the city had acted arbitrarily and capriciously. Rather, the governing statute, G. L. c. 31, § 2(*b*), requires the commission to find whether, on the basis of the evidence before it, the appointing authority has sustained its burden of proving that there was reasonable justification for the action taken by the appointing authority.[3] *Mayor of Revere* v. *Civil Serv. Commn.,* 31 Mass. App. Ct. 315, 320 n.10, 321 n.11, 322 n.12 (1991). See *Commissioners of Civil Serv.* v. *Municipal Court of the City of Boston,* 359 Mass. 211, 214 (1971); *Murray* v. *Second Dist. Ct. of E. Middlesex,* 389 Mass. 508, 516 (1983); *Gloucester* v. *Civil Serv. Commn.,* 408 Mass. 292, 297 (1990); *Watertown* v. *Arria,* 16 Mass. App. Ct. 331, 334 (1983); *Dedham* v. *Civil Serv. Commn.,* 21 Mass. App. Ct. 904, 906 (1985). That standard gives the commission some scope to evaluate the legal basis of the appointing authority's action, even if based on a rational ground. To illustrate, while it might be rational for an appointing authority to consider a candidate's twelve year old convic-

---

[3]This parallels the standard of review under G. L. c. 31, § 43.

tion of assault and battery, it would not be a proper consideration if a statute or regulation existed that prohibited consideration by public employers of a conviction that occurred more than ten years prior to the time of the appointment decision. "Justified," in the context of review, means "done upon adequate reasons sufficiently supported by credible evidence, when weighed by an unprejudiced mind, guided by common sense and by correct rules of law." *Selectmen of Wakefield* v. *Judge of First Dist. Ct. of E. Middlesex,* 262 Mass. 477, 482 (1928). *Commissioners of Civil Serv.* v. *Municipal Ct. of the City of Boston, supra* at 214.[4]

In making that analysis, the commission must focus on the fundamental purposes of the civil service system — to guard against political considerations, favoritism, and bias in governmental employment decisions, including, of course, promotions, and to protect efficient public employees from political control. *Murray* v. *Second Dist. Ct. of E. Middlesex,* 389 Mass. at 514. *Kelleher* v. *Personnel Administrator of the Dept. of Personnel Admn.,* 421 Mass. 382, 387 (1995). *Police Commr. of Boston* v. *Civil Serv. Commn.,* 22 Mass. App. Ct. 364, 370 (1986). When there are, in connection with personnel decisions, overtones of political control or objectives unrelated to merit standards or neutrally applied public policy, then the occasion is appropriate for intervention by the commission. It is not within the authority of the commission, however, to substitute its judgment about a valid exercise of discretion based on merit or policy considerations by an appointing authority. *School Comm. of Salem* v. *Civil Serv. Commn.,* 348 Mass. 696, 698-699 (1965). *Debnam* v. *Belmont,* 388 Mass. 632, 635 (1983). *Commissioner of Health & Hosps. of Boston* v. *Civil Serv. Commn.,* 23 Mass. App. Ct. 410, 413 (1987). In the task

---

[4]For illustrations of applications of that standard see: *Commissioner of the Metropolitan Dist. Commn.* v. *Director of Civil Serv.,* 348 Mass. 184, 195-197 (1964) (bypass of a disabled veteran); *Commissioners of Civil Serv.* v. *Municipal Ct. of the City of Boston,* 359 Mass. 211, 216 (1971) (dismissing police officer); *Police Commr. of Boston* v. *Municipal Ct. of the W. Roxbury Dist.,* 368 Mass. 501, 506 (1975) (discharge of police officer); *Debnam* v. *Belmont,* 388 Mass. 632, 634-636 (1983) (position abolished); *Callanan* v. *Personnel Administrator for the Commonwealth,* 400 Mass. 597, 600-602 (1987) (make up of eligibility list); *Cambridge Hous. Authy.* v. *Civil Serv. Commn.,* 7 Mass. App. Ct. 586, 588-591 (1979) (position purportedly abolished); *McIsaac* v. *Civil Serv. Commn.,* 38 Mass. App. Ct. 473, 476 (1995) (discharge of police officer).

of selecting public employees of skill and integrity, appointing authorities are invested with broad discretion. *Callanan* v. *Personnel Administrator for the Commonwealth*, 400 Mass. 597, 601 (1987). *Mayor of Revere* v. *Civil Serv. Commn.*, 31 Mass. App. Ct. at 320-321.

In the instant case, the commission exposes its error when it concedes the relevance of Langston's falsehoods in the shooting incident of 1984 and the fact of domestic dispute of 1989, but chides the city of Cambridge appointing authority with having given those incidents undue weight in light of the enthusiastic letters about her work performance. That is an impermissible substitution by the commission of its judgment for that of the appointing authority about the importance, to her fitness to be a police officer, of Langston's criminal record balanced against her work record. We might, as the commission apparently did, think that on balance she is worth a risk by the city. Perhaps her experience would help her deal more effectively with crime, drugs, and domestic violence. Whether to take such a risk is, however, for the appointing authority to decide. In this case, the city manager may, within his discretion, decide not to take the risk inherent in hiring someone who has, so the appointing authority may reasonably think, shown poor impulse control and has spoken falsely in a court setting.[5] Prior misconduct has frequently been a ground for not hiring or retaining a police officer. See *Commissioners of the Metropolitan Dist. Commn.* v. *Director of Civil Serv.*, 348 Mass. 184, 195-197 (1964); *Commissioners of Civil Serv.* v. *Municipal Ct. of the City of Boston*, 359 Mass. at 212; *Commissioners of Civil Serv.* v. *Municipal Ct. of the Brighton Dist.*, 369 Mass. 166, 173-174, cert. denied, 429 U.S. 845 (1975); *Watertown* v. *Arria*, 16 Mass. App. Ct. at 335; *Police Commr. of Boston* v. *Civil Serv. Commn.*, 22 Mass. App. Ct. at 369; *Police Commr. of Boston* v. *Civil Serv. Commn.*, 39 Mass. App. Ct. at 595. Measured in terms of an adequate reason, supported by credible — it was undisputed — evidence, and application of common sense, the decision of the city and the Administrator to bypass Langston was justified, and, hence, not subject to correction by the commission.

The judgment entered in the Superior Court is reversed and a judgment shall be entered vacating the decision of the commis-

---

[5]The Roxbury District Court record involving the false statement is not available and we do not know whether Langston was under oath when she spoke falsely in court.

sion and affirming the action of the Administrator in authorizing the bypass of Langston.

*So ordered.*