Locke, Jeffrey A., J.
Pursuant to M.G.L.c. 30A, §14, the plaintiff, Town of Oxford (“Town”), brings this action seeking judicial review of a final administrative decision of the Massachusetts Civil Service Commission (“Commission”) in Gaudette v. Town of Oxford, G-02-298. Following a hearing on September 14, 2004, the hearing officer issued a decision vacating the Town’s bypassing of Gaudette for appointment as a police officer and ordering that his name be placed at the top of the current or next list of civil service-eligible candidates. The hearing officer’s decision was affirmed by the full Commission on August 11, 2005, and the Town timely filed its appeal. On October 30, 2006, the Court heard argument on the Town’s motion for judgment on the pleadings and took the matter under advisement.

FACTS

In April 2001, the Town of Oxford, received a roster certification list from the Commonwealth’s Human Resource Division of those eligible for appointment as permanent/intermittent police officers, pursuant to M.G.L.c. 31, the Commonwealth’s Civil Service statute. The Town was seeking to fill five vacant positions within the ranks of the police department and was required to choose the five from among the top eleven candidates on the list who indicated a willingness to accept an appointment. Kevin Gaudette was the ninth candidate on the list, followed by Sender Ali who ranked tenth.
Oxford Police Chief Charles Noyes received personnel packets for the interested candidates and assigned Sgt. Anthony Saad to conduct background checks of the applicants. Saad .had performed background investigations for approximately 16 years and used a written questionnaire when he contacted references. In connection with his background check on Gaud-ette, Saad spoke with a number of references including Charlton Police Chief James Pervier, Oxford Fire Chief Jeffrey Wilson, and Holy Cross Police Captain Neil Carmody. All three responded negatively to questions relating to Gaudette’s work habits, judgment, or suitability to serve as a police officer.[1] Although Saad’s pre-printed interview form called for reasons for a negative response, none were given in two instances and one reference (Carmody) refused to elaborate on the basis for his statements.
On May 31, 2001, Chief Noyes submitted written recommendations to the Town’s Board of Selectmen, recommending five candidates for selection. With regard to Gaudette, Chief Noyes recommended that he *238 not be appointed to the police force, citing, “ [Reference checks with employers report inconsistent work habits, question of his judgment, as well as his ability to handle police calls.”[2] On June 5, 2001, the Board of Selectmen interviewed the candidates (including Gaudette and Ali), following which they voted to appoint five individuals (the same five recommended by Chief Noyes) to the vacant positions. Ali, who was ranked one spot lower on the list of eligible applicants, was appointed to a position. Thereafter, the Town filed with the Human Resources Division a certification setting forth the candidates selected for employment and stating, as to those selected, the reasons for their selection. Gaudette was listed on the certification as a candidate who was not selected but no reasons were cited for not selecting him.
As noted, Gaudette had extensive prior experience in the public safety arena. In addition, he had attended numerous police-related training courses including a 17-week residential training program at the State Police Academy, and had received commendations for his work as a police dispatcher and as a firefighter. He had also completed one year of college credit towards a degree in criminal justice. By contrast, Ali had no prior experience in law enforcement or the public safely field. He had a bachelor’s degree in business administration and worked as a salesman for a food distribution company. He had attended, at his own expense, a reserve/intermittent police training program and taken courses through the Criminal Justice Training Council.

DISCUSSION

Judicial review of an administrative decision under M.G.L.c. 30Ais confined to the administrative record, G.L.c. 30A, §§14(4), 14(5) and requires that the appealing party prove that the decision is invalid. Merisme v. Board of App. on Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989). Under c. 30A. §14(7) an administrative decision may be set aside if it is based on errors of law,[3] unsupported by substantial evidence,[4] or arbitrary and capricious.[5] In reviewing the administrative decision, a court must afford substantial deference to the agency’s factual findings, Flint v. Commissioner of Public Welfare, 412 Mass. 416, 420 (1992), and may not conduct a de novo review of the evidence or draw different inferences from the facts found by the agency. Retirement Board of Brookline v. Contributory Retirement Appeal Board, 33 Mass.App.Ct. 478, 489 (1992). However, an administrative agency’s ruling of law is subject to due novo review. Boston Police Superior Officer’s Federation v. Labor Relations Commission, 410 Mass. 890, 892 (1991). The administrative decision must be affirmed unless the petitioning party meets its burden of proving that the decision is legally invalid. Merisme, 11 Mass.App.Ct. at 474.
In an appeal before the Civil Service Commission, the appointing authority bears the burden of proving, by a preponderance of the evidence, “that there was reasonable justification for the action taken by the appointing authority.” City of Cambridge v. Civil Service Commission, 43 Mass.App.Ct. 300, 304 (1997). Reasonable justification means the appointing authority’s actions were based on adequate reasons supported by credible evidence, when weighed by an unprejudiced mind, guided by common sense and by correct rules of law. Commissioners of Civil Service v. Municipal Ct. of the City of Boston, 359 Mass. 214 (1971). In cases involving the bypass of a candidate on the civil service list in favor of another candidate ranked lower on the list it is appropriate to consider the comparative qualifications of each candidate in determining whether the appointing authority has demonstrated reasonable justification. The Commission, however, may not substitute its judgment about a valid exercise of discretion based on merit or policy considerations as weighed by the appointing authority. City of Cambridge, 43 Mass.App.Ct. at 304.
In the instant case the hearing officer found, and the Town does not genuinely dispute, that Gaudette had a wealth of public safely training and experience when compared to Ali. At the hearing the Town contended that Ali was better suited than Gaudette because of the three negative references. Gaudette objected to the introduction of that evidence based on the Town’s failure to assert it as a reason for bypassing Gaudette in its certification to the Human Resources Division, as required by administrative rules.
Personnel Administration Rule PAR .08(3) provides,
Upon determining that any candidate on a certification is to be bypassed, as defined in Personnel Administration Rule. 02, an appointing authority shall, immediately upon making such determination, send to the Personnel Administrator, in writing, a full and complete statement of the reason or reasons for bypassing a person or persons more highly ranked, or of the reason or reasons for selecting another person or persons, lower in score or preference category. Such statement such indicate all reasons for selection or bypass on which the appointing authority intends to rely or might, in the future, rely, to justify the bypass or selection of a candidate or candidates. No reasons that are known or reasonably discoverable by the appointing authority, and which have not been disclosed to the Personnel Administrator, shall later be admissible as reasons for selection or bypass in any proceeding before the Personnel Administrator or the Civil Service Commission.
At the time of the administrative hearing the Town argued, and argues again here, that it complied with PAR .08(3) by stating the reasons for its selection of Ali, thereby satisfying the rule which provides a choice of stating the “reason or reasons for bypassing a person ... or .. . the reason or reasons for selecting another person ...” The Town relies on Goldman v. *239 Town of Randolph, 17 MCSR 82 (2004), for its claim that PAR .08(3) permits comparative evidence to be presented at a hearing to explain, clarify, or justify a decision to bypass a higher-ranked candidate. In Goldman, the Commission ruled that because the Personnel Administrator had the authority to convene a hearing to review the reasons for bypass, thereby permitting amplification of those reasons, there was no error in the Administrator receiving a written resubmission of reasons that supported the decision so long as the Town did not add new or different grounds.
Goldman does not permit the expansive interpretation advanced by the Town in the instant case. By stating the reason(s) for its selection of Ali but neglecting entirely to state its reason(s) for bypassing Gaud-ette, the Town violated the second provision of PAR .08(3), which requires a designation of all reasons for a bypass decision that it relies or might rely on to justify the decision. On a review of the administrative record here, it is unquestionably the case that the Town chose Ali over Gaudette because of Gaudette’s negative references, as reported to the Board of Selectmen by Chief Noyes.
PAR .08(3) is intended to “uphold the basic tenet of the civil service law to protect the service from arbitrary and capricious actions and to avoid overtones of political motivations and bias in employment.” Goldman v. Town of Randolph, 17 MSCR 83, citing City of Cambridge v. Civil Service Commission, 43 Mass.App.Ct. 301 (1997); McHenry v. Civil Service Commission, 40 Mass.App.Ct. 632 (1996). It would seem that the requirement for a statement of reasons at the time of a bypass decision is to ensure that the real reason for the appointing authority’s decision is known and to prevent post-decision rationalizations which might mask arbitrary or politically-motivated choices. That protection is not necessary in the instant case because the adverse information regarding Gaudette was memorialized in Chief Noyes’ written recommendations to the Board of Selectmen before the Board interviewed candidates and made their selections.
The hearing officer in his written decision ruled that the Town could not rely on the negative reference information as to Gaudette based on its failure to comply with PAR .08(3). Assuming, without deciding, that the hearing officer stopped there, there could be adequate grounds to affirm the Commission’s decision. However, the hearing officer went further. He compared the respective qualifications of Gaudette and Ali, and considered numerous letters of commendation relating to Gaudette’s work as a police dispatcher. He then considered the three negative references and rejected them as unreliable and inaccurate, based largely on the manner by which Sgt. Saad conducted reference interviews. The hearing officer found that Saad violated good practice by conducting interviews by telephone rather than in person, that he failed to delve into the reasons for a negative comment by the interviewee, and failed to take further steps to inquire into Gaudette’s background by inspecting his personnel file. The hearing officer concluded that Saad’s incomplete investigation was evidence that the bypass decision was the result of political and personal favoritism.
There is no evidence in the administrative record, and none was offered during the hearing itself suggesting or supporting a claim of personal or political favoritism in favor of Ali or against Gaudette. Indeed, at the close of the evidence before the Commission, the hearing officer concluded as much, stating, “I’m not looking at bias or undue influence in the process — just the process being flawed to the point where someone makes an honest mistake . . .[6] In stark contrast to this statement, the hearing officer in his written decision concluded that the bypass was biased and skewed against Gaudette, and that the Town relied on unfounded negative comments to jettison Gaudette’s candidacy.
Generally, credibility determinations and conclusions drawn therefrom are not open for review by this Court. See Retirement Board of Brookline v. Contributory Retirement Appeal Board, 33 Mass.App.Ct. 478, 480 (1992) (credibility determinations lie solely with the fact finder and are not subject to de novo review). However, to receive such deference, the record evidence must provide some basis for the fact finder to make a determination regarding whether information is credible. Here, the parties introduced the three negative references by written report and through Sgt.’s testimony. They stipulated that the negative information contained in Saad’s interview reports accurately related what he was told. None of the three individuals (Chief Pervier, Chief Wilson, or Captain Carmody) testified at the hearing and scant information regarding their relationship with Gaudette was presented. Notwithstanding the absence of evidence, the hearing officer concluded that their comments were false, and that “these inaccurate statements as reported by Sgt. Saad [are] some evidence of the political and personal favoritism that occurred in this case.”[7] There simply is no evidence anywhere in the administrative record to support such a conclusion.[8] Nothing was presented to discredit the comments of Captain Carmody who, when pressed by Saad, refused to elaborate on the reasons why Gaudette was fired from the Holy Cross Police Department. Similarly, the sole criticism of Chief Pervier’s negative comment was that Pervier had earlier written a letter of recommendation for Gaudette in connection with an application to join another college police force.[9]
Because the hearing officer erred by rejecting entirely the import of the negative comments regarding Gaudette’s suitability for a police officer position, and improperly imputed to the Town a finding that the decision was the product of political or personal favor *240 itism, the decision is arbitrary and cannot stand. This conclusion does not, however, result in judgment in favor of the Town. Redacting the erroneous findings and conclusions from the decision there is still a substantial concern about whether the bypass was based on reasonable justification. On balance, the Court concludes that the correct course of action, as permitted by G.L.c. 30A, §14(7) is to vacate the decision and remand the case to the Commission for a de novo hearing.

ORDER

Plaintiffs motion for judgment on the pleadings is ALLOWED in part The decision of the Civil Service Commission is set aside and the matter is remanded for a de novo hearing before the Commission.

The parties stipulated at the Civil Service hearing to Saad’s interview reports, agreeing that they accurately reflected comments by the persons interviewed.

Administrative Record, Tab 19; Stipulated Exhibit 8.

M.G.L.c. 30A, §14(7)(c).

M.G.L.c. 30A, §14(7)(e).

M.G.L.c. 30A, §14(7)(g).

Administrative Record, Tab 24, Transcript of Rearing, p. 83.

Decision, p. 19.

In the Decision the hearing officer takes note and references findings made in another case involving the same selection process. In Fairbanks v. Town of Oxford, G-01-1483, the Commission, long after hearing in the instant case, heard and decided another challenge to the June 2001, appointment of officers. Apparently, in Fairbanks the Commission found some sort of improper favoritism and vacated the Board’s rejection of Fairbanks. Putting aside the issue of whether Fairbanks is a “related proceeding” which might permit the Commission to take notice of it under its Rules of Procedure, the fact that favoritism was proven in another appeal does not, without more, prove that favoritism was at play in the instant case. Without an adequate and independent basis in the record evidence at the time of the hearing, the imputation of impropriety is not justified.

The hearing officer rejected Pervier’s negative recommendation as “hearsay," Decision, pp. 4-5, ¶7, while at the same time crediting Pervier’s written letter of recommendation as the true and accurate representation of Pervier’s opinion of Gaudette. Id. at 5, ¶14. Given the stipulation regarding the accuracy of Pervier’s statements to Saad, the hearing officer erred in excluding these statements from the evidence.