## HERCULES CHEMICAL COMPANY *VS.* DEPARTMENT OF ENVIRONMENTAL PROTECTION.

No. 09-P-655.

Suffolk. January 19, 2010. - April 23, 2010.

Present: KATZMANN, GRAINGER, & MEADE, JJ.

*Department of Environmental Protection. Administrative Law,* Adjudicatory proceeding, Regulations. *License.*

This court concluded that the manufacturer of a product that the Department of Environmental Protection (department) had included on its list of approved septic system additives and restoratives was entitled to an adjudicatory hearing to contest the department's decisions to remove the product from the list of allowed septic system additives and to deny the manufacturer's application to allow the use of the product as a conditioner or restorative, where the department's combined actions were the equivalent of the revocation of the manufacturer's license, and where the manufacturer's combined challenge to the two decisions was timely. [642-644]

CIVIL ACTION commenced in the Superior Court Department on May 4, 2007.

The case was heard by *Charles T. Spurlock,* J., on motions for judgment on the pleadings.

*James A. Kosch,* of New Jersey, & *Matthew M. O'Leary* for the plaintiff.

*Daniel J. Hammond,* Assistant Attorney General, for the defendant.

MEADE, J. The Hercules Chemical Company (Hercules) appeals from a judgment dismissing its complaint challenging the decisions of the Department of Environmental Protection (department) to "delist" its product, Aid-Ox, as an approved septic system additive or restorative.[1] On appeal, Hercules claims in

---

[1] Hercules styled its complaint as a challenge under G. L. c. 30A, § 14, but the department states that it would have been more properly treated as being pursuant to G. L. c. 249, § 4. The judge's decision on the matter sheds no light on this issue. We agree with the department that the distinction here is immaterial as both statutes permit review of agency action to determine if that

part that the department's decisions, made without providing an adjudicatory hearing, must be set aside as contrary to law, arbitrary and capricious, or lacking in evidentiary support. We agree on the first of these grounds and remand to the department for adjudicatory proceedings.

1. *Background.* On October 18, 1995, the department listed, i.e., approved, Aid-Ox as a septic system additive and restorative under Title 5 of the State environmental code, 310 Code Mass. Regs. §§ 15.000 et seq.[2] In so doing, the department determined that Aid-Ox (1) will not harm septic system components (including the biomat[3]), or adversely affect (2) system function or (3) the environment.[4] When Aid-Ox entered the market with the department's approval, the department had been informed that its active ingredient was sodium percarbonate (also known as sodium carbonate peroxyhydrate), and that

---

action was legally erroneous, arbitrary and capricious, or unsupported by substantial evidence.

[2]The department's approval letter stated, "The Department hereby *allows* the use of [Aid-Ox] as a soil absorption[] system conditioner/restorative subject to . . . conditions" not relevant here.

[3]Also called the biological mat, this septic system component is "[a] layer composed of microorganisms and organic material located below a soil absorption system which forms on the infiltrative surface of soil and which provides biological treatment of septic tank effluent." 310 Code Mass. Regs. § 15.002 (2006).

[4]See 310 Code Mass. Regs. § 15.027 (1995) (prohibiting septic system additives without prior written determination by department that the three criteria in paragraph [3] are met; and requiring department to maintain and publish list of allowed additives); 310 Code Mass. Regs. § 15.028 (1995) (entitled "[s]oil [a]bsorption [s]ystem [r]estoration"; prohibiting "any physical, chemical or biological treatment process to restore or condition a soil absorption system without the prior written determination of the Department that the proposed treatment process has met the [same three] criteria set forth in 310 [Code Mass. Regs. §] 15.027[3]"; and requiring department to maintain and publish list of "allowed treatment processes").

At all relevant times, the definitions section of the regulations has described a septic system additive as "[a]ny solid or liquid material or biological agent intended or used primarily for cleaning, treating, degreasing, unclogging, disinfecting, deodorizing or otherwise affecting the performance of any component of an on-site system." 310 Code Mass. Regs. § 15.002 (2006). See 310 Code Mass. Regs. § 15.002 (1995). Neither the terms "restoration," "restore," "condition," nor their variants have been defined in this section or, so far as we can discern, elsewhere in the regulations. The department seems to use these latter terms specifically in connection with "failing" septic systems. See note 6 and accompanying text, *infra*.

its intended use included restoring septic systems. Aid-Ox has been available in the Commonwealth, without change in chemical composition, since 1995.

On August 17, 2006, the department advised Hercules that it had concerns that the sodium percarbonate in Aid-Ox may harm septic system components (specifically the biomat) and adversely affect system function and the environment, which put the listing of Aid-Ox as an allowed additive at odds with 310 Code Mass. Regs. § 15.027 (2006).[5] The department requested that Hercules respond. Hercules did so, providing the department with, among other things, letters from two proffered experts, both of whom suggested that Aid-Ox, which they indicated is used as a "restorative" for "failing" systems, was completely harmless.

In light of Hercules's response, the department seemingly abandoned its concerns with Aid-Ox's safety and instead, without notice to Hercules, shifted its focus to the use of Aid-Ox as a "restorative" for "failing" systems. According to departmental regulations, chemical additives ordinarily may not be used in place of the "upgrade[]" that is the mandated response to a "failing" system[6]; in the usual case, the only available cure for a failing system is to physically replace the inadequate components with functioning ones. See 310 Code Mass. Regs. §§ 15.002, 15.303, 15.404, 15.405 (2006).[7] In light of this, the department advised Hercules on October 13, 2006, that it would remove Aid-Ox from the list of approved additives under 310 Code Mass. Regs. § 15.027,[8] and it invited Hercules instead to

---

[5]There appears to be no difference between the applicable 1995 and 2006 versions of this regulation.

[6]Although the regulations do not specifically define a "failing" system, they define a "*[f]ailed* [s]ubsurface [s]ewage [d]isposal [s]ystem or *[f]ailed* system" as "[a] system which *fails* to protect public health and safety or the environment as set forth at 310 [Code Mass. Regs. §§] 15.303 or 15.304" (emphases added). 310 Code Mass. Regs. § 15.002 (2006). The department appears to use the terms "failing," "failed," and "fails" without distinction. See, e.g., 310 Code Mass. Regs. § 15.303 (2006) ("If one or more of the following conditions exist . . . the system is *failing* to protect public health and safety and the environment and shall be upgraded . . ." [emphasis added]).

[7]These regulations appear to have undergone no relevant changes from their applicable 1995 counterparts.

[8]Contrary to Hercules's argument, the department's legal authority to remove a substance from the list of allowed additives or restoratives is fairly implied from the governing statutory and regulatory provisions.

seek approval for the product under the department's "Innovative/ Alternative System program."[9]

In response, Hercules apparently sought approval of Aid-Ox under this alternative designation, but on January 2, 2007, the department rejected the application, once again raising concerns that Aid-Ox "may harm the soil absorption system biomat and/or soil structure." The department invited Hercules to "pursue approval for the controlled testing of the product under the [department's] innovative and alternative system program to evaluate the product[']s potential for further consideration."[10] Instead, Hercules claimed adjudicatory hearings on both decisions. A department hearing officer determined that Hercules was not entitled to an adjudicatory hearing as to either decision, and that the challenge to the initial delisting determination was untimely. The department adopted the hearing officer's decision without discussion. On judicial review, acting on cross motions for judgment on the pleadings, a Superior Court judge dismissed Hercules's complaint without elaboration. Hercules appealed.

2. *Discussion.* Although we decide the appeal on the narrow

[9]See 310 Code Mass. Regs. § 15.028 (2006) (effective April 21, 2006), under which the department shall maintain and publish a list of allowed "physical, chemical or biological treatment process[es]" to "restore or condition . . . soil absorption system[s]"; unlike under the 1995 version of this regulation that applied to Aid-Ox's original approval, such listing under the 2006 (and still current) version requires approval of the treatment process by the department "for use as an alternative system pursuant to 310 [Code Mass. Regs. §§] 15.280 through 15.288 [(2006)]." Contrast 310 Code Mass. Regs. § 15.028 (1995), which, as indicated in note 4, *supra*, required only the meeting of the three § 15.027(3) criteria for the listing of a restorative or conditioner. It would seem that under the current regulations, a restorative/conditioner (a term not explicitly defined, see note 4, *supra*) is in a specialized subcategory of additives subject to an additional layer of department approval. In their briefs and at oral argument, neither the department nor Hercules brought this regulatory change to our attention. We assume the parties will consider the point on remand.

[10]This invitation is puzzling, given that Hercules's application came in response to a similar recommendation in the October 13, 2006, decision. It may be that the application did not make clear that Hercules was in fact seeking approval for Aid-Ox as an alternative system, although in places the parties' briefs seem to agree that it did. Elsewhere in its brief, however, the department asserts that its January 2, 2007, letter "essentially denied Hercules's request to continue marketing Aid-Ox as an additive/restorative while the required testing of the 'alternative system' under [§§ 15.280 through 15.288] w[as] ongoing." We need not reconcile these matters to decide the narrow issues in this appeal.

basis that animated the hearing officer's decision, we first note Hercules's understandable protest that the department's regulatory actions were arbitrary and capricious in creating a "moving target" against which Hercules had to defend. "A decision is arbitrary and capricious when it lacks any rational explanation that reasonable persons might support." *Cambridge* v. *Civil Serv. Commn.*, 43 Mass. App. Ct. 300, 303 (1997). Arbitrary and capricious action is that which is taken "without consideration and in disregard of facts and circumstances." *Long* v. *Commissioner of Pub. Safety*, 26 Mass. App. Ct. 61, 65 (1988). In the eleven years between the department's decision to list and then to delist Aid-Ox, the product never changed. Instead, what appeared to Hercules to have changed was the department's own subjective realization as to how Aid-Ox was being used. (But see note 9, *supra*, regarding certain regulatory changes not discussed by the parties.) No evidence has been introduced to support the department's originally expressed concern that Aid-Ox is harmful.[11] By changing its reasoning for delisting Aid-Ox without warning or thorough explanation, and later returning to the abandoned rationale as a basis for its decision denying "alternative system" designation, the department courts scrutiny under the arbitrary and capricious standard. An agency should strive to act on bases that are uniform and predictable. See *Fafard* v. *Conservation Commn. of Reading*, 41 Mass. App. Ct. 565, 568 (1996).

We turn now to the grounds for our decision on appeal. Relying on G. L. c. 21A, § 13, and 310 Code Mass. Regs. § 15.422 (2006), the hearing officer concluded that Hercules was not entitled to a departmental adjudicatory hearing because neither of the decisions fell into appealable categories. However, we agree with Hercules that in the circumstances the department's combined actions were the equivalent of the revocation of a license under G. L. c. 30A, § 13, which defines license as including "any license, permit, certificate, registration, charter, authority or similar form of permission required by law." *Ibid.*, inserted by St. 1954, c. 681, § 1. The department's regulations effectively state that no septic system additive may be recom-

[11]Because both parties will have the opportunity to develop the evidentiary record on remand, we decline Hercules's premature invitation to invalidate the department's decisions for lack of substantial evidence.

mended for use or used in the Commonwealth without permission from the department. 310 Code Mass. Regs. § 15.027.[12] Under G. L. c. 30A, § 13, the revocation of a license entitles the license holder to an adjudicatory hearing in conformity with G. L. c. 30A, §§ 10, 11, and 12.

Nor are we detained long by the hearing officer's conclusion that Hercules's challenge to the initial delisting determination was untimely. At oral argument, the department took the sensible position that because the department's two decisions were consolidated before the hearing officer, and Hercules's claim for a hearing on the second decision was timely, the entire matter was timely. We agree. Additionally, we note that neither of the letters informing Hercules of the department's decisions properly notified Hercules of its right to claim an adjudicatory hearing or the time frame for doing so. See G. L. c. 30A, § 10(1); 310 Code Mass. Regs. § 1.01(6)(c) (2004).

Accordingly, we reverse the Superior Court judgment and direct the entry of a new judgment vacating the department's decisions to remove Aid-Ox from the list of allowed septic system additives and to deny Hercules's application to allow the use of Aid-Ox as a conditioner/restorative. The matter shall be remanded to the department for an adjudicatory hearing on these decisions, consistent with this opinion.[13]

*So ordered.*

---

[12]We are unpersuaded by the department's claim that Hercules can still market Aid-Ox to end-users even though it would be illegal for system inspectors, soil evaluators, installers, or haulers of septage to use or recommend the use of the product. See 310 Code Mass. Regs. § 15.027(1). The department's regulation also prohibits "any person" from using a septic system additive without the department's written determination that the additive meets the criteria set forth in 310 Code Mass. Regs. § 15.027(3). See 310 Code Mass. Regs. § 15.027(2).

Additionally, we note that 310 Code Mass. Regs. § 15.028(1) (2006) prohibits "any person" from "market[ing] for sale any physical, chemical or biological treatment process to restore or condition a soil absorption system" without the department's approval of that process under its "alternative system" regulations.

[13]We stress that we are mindful of the restriction in 310 Code Mass. Regs. § 15.303 regarding the general prohibition on the use of chemical additives to "upgrade[]" a "failing" system. At the same time, we note that Hercules was not given the opportunity to address this restriction, or to establish what might be permissible use of Aid-Ox as an additive short of qualifying as a conditioner/ restorative.