## THOMAS D. SULLIVAN *vs.* MUNICIPAL COURT OF THE ROXBURY DISTRICT.

Suffolk.    January 5, 1948. — April 2, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, RONAN, & WILLIAMS, JJ.

*Civil Service. District Court,* Review of action with respect to civil service
  *Police. Certiorari. Law of the Case. Administrative Board or Officer
  Words,* "Justified," "Review."

A hearing under G. L. (Ter. Ed.) c. 31, § 43 (b), as appearing in St. 1945,
   c. 667, § 1, held by a member of the civil service commission or a
   disinterested person at the request of one discharged by an appointing
   authority, is not merely a review of the hearing before the appointing
   authority but is a hearing de novo upon all material evidence.
A proceeding for review before a District Court under G. L. (Ter. Ed.)
   c. 31, § 45, as appearing in St. 1945, c. 667, § 2, after a decision by the
   civil service commission under § 43 (b), affirming action by an ap-
   pointing authority, is merely for a reëxamination of the proceedings
   before the appointing authority and the civil service commission to
   the end that a result which appears not to be based upon the exercise
   of an unbiased and reasonable judgment may be prevented; there
   should be no reversal of the earlier decision if, upon the evidence and
   record before the reviewing judge, it appears to have been honestly
   made and warranted, although the reviewing judge, if he had been
   trying the whole issue afresh, might properly have reached a different
   conclusion.
Under G. L. (Ter. Ed.) c. 249, § 4, as amended by St. 1943, c. 374, § 1,
   it was proper for a judge of a District Court, respondent in a certiorari
   proceeding to quash a decision by him under G. L. (Ter. Ed.) c. 31, § 45,
   as appearing in St. 1945, c. 667, § 2, to include in his return a transcript
   of the evidence taken before him as well as transcripts of the evidence
   before the appointing authority and of the evidence before the civil
   service commission.
The civil service commission, in considering a report by a disinterested
   person appointed under G. L. (Ter. Ed.) c. 31, § 43 (b), as appearing
   in St. 1945, c. 667, § 1, was not bound by his ultimate conclusions
   but could rest its own decision upon his subsidiary findings.
On the record before the Superior Court in certiorari proceedings, brought
   to quash a decision by a judge of a District Court under G. L. (Ter.

Ed.) c. 31, § 45, as appearing in St. 1945, c. 667, § 2, affirming, as justified, action by an appointing authority discharging a police officer on a charge of conduct unbecoming an officer and action by the civil service commission affirming the action of the appointing authority, the decision of the respondent was shown to be warranted where, among other circumstances attending an arrest of the police officer with two companions early in the morning, it appeared that the officer did not make known that he was a police officer until, in "frisking" the three, there was found in his pocket a black jack not supplied to him by the police department, to carry which was a violation of a rule of the department, and that, when asked why he had not until twelve hours after the arrest disclosed his knowledge of certain facts relating to property stolen by one of his companions, he replied that he did not want to be a "stool pigeon"; it was not necessary that the record disclose that he knew that his two companions or either of them was a criminal or that either of them had committed a crime on the night in question.

A judge of the Superior Court hearing a proceeding in certiorari did not establish "the law of the case" by making a ruling after the close of the hearing that a police officer could not be discharged on a charge of conduct unbecoming an officer when he was arrested in the night-time in company with two companions unless he knew or should have known that one of them was a convicted felon and that both had been guilty of a felony on the night in question, where other facts shown by the record justified the discharge of the officer irrespective of such knowledge.

The technical accuracy of indictment and trial in a criminal court cannot be expected in specifications and hearings before laymen respecting discharge of persons in the classified civil service; it is enough if the requirements of substantial justice are observed.

Certain inaccuracies in subsidiary findings by an appointing authority after a hearing under G. L. (Ter. Ed.) c. 31, § 43 (a), as appearing in St. 1945, c. 667, § 1, respecting a discharge of a police officer, became unimportant in view of a full hearing subsequently held before a disinterested person appointed by the chairman of the civil service commission, his ample findings of subsidiary facts, and an independent decision by the commission.

PETITION, filed in the Superior Court on November 27, 1946, for a writ of certiorari to quash a decision of the respondent in circumstances described in the opinion.

The case was heard by *Cabot*, J., upon the petition and the return of the respondent.

Material portions of the charge against the petitioner, and specifications relating thereto, were as follows: "CHARGE: CONDUCT UNBECOMING AN OFFICER. *Specification* 1: In that on April 27, 1946, Patrolman Thomas D. Sullivan was in the company of Robert T. Rollins . . . a convicted

felon, and Joseph E. MacEachern . . . in whose car . . . evidence of the proceeds of a felony were found, to wit: a wallet, the property of Casper Ranger, . . . which was stolen from Ranger's person on Boylston Street, near Arlington Street, at about 1:45 A.M., April 27, 1946, and containing $30 in currency and personal papers. Ranger later identified Rollins as the man who stole his wallet. *Specification* 2: Patrolman Thomas D. Sullivan, being arrested while in the company of both Rollins and MacEachern, within forty-five minutes after the commission of a felony, did by such association and arrest commit an act contrary to good order and discipline, thereby casting his fellow officers into disrepute."

The police commissioner, after a hearing, made the following finding and order: "I find Patrolman Thomas D. Sullivan guilty of the charge of conduct unbecoming an officer and the specifications thereunder. I further find that the said Patrolman Sullivan is not a fit and proper person to be a member of the Boston Police Department and I order him discharged from the department effective as of 5:45 o'clock P.M., Monday, June 24, 1946."

The civil service commission, after a hearing by a disinterested person appointed by their chairman and upon his report, confirmed the decision of the police commissioner, and made the following statement of findings: "That on April 27, 1946, Patrolman Thomas D. Sullivan was in the company of Robert T. Rollins of Roxbury, Massachusetts, a convicted felon, and Joseph E. MacEachern, also of Roxbury, Massachusetts, when the three were arrested at a restaurant known as the Green Pagoda on Boylston Street in Boston; that in the Studebaker automobile, Massachusetts Registration 666–046 which is the property of MacEachern, the proceeds of a felony, which was committed about 1:45 A.M. on Boylston Street, near Arlington Street, in Boston, were found; that the said proceeds of a felony was a wallet containing $30 currency and personal papers, the property of one Casper Ranger of Boston; that Ranger identified Rollins, as the man who stole his wallet, said identification being in the Police Station and in the presence

of Rollins, MacEachern and Sullivan after the arrest of the three; that upon his arrest, Sullivan did not make known that he was a police officer until after he was searched and a black jack was found on his person by the police; that when he was being arrested, Sullivan did not give the police any information about anything being thrown past him as he entered the patrol wagon at the Green Pagoda and for twelve hours after his detention Sullivan failed to tell the police of his belief that the wallets, found in the patrol wagon where Sullivan was sitting, were thrown past him as he entered the patrol wagon; that when he was in the presence of Captain Masuret being questioned about why he did not give this information to the police, he said that his reason for not giving the information about the wallets was that he 'didn't want to be a stool pigeon'; that Sullivan's association with Rollins and MacEachern on April 27, 1946 and his subsequent arrest on the same date, together with his conduct for twelve hours after his arrest, is contrary to good order and discipline in the Boston Police Department and does tend to cast his fellow officers into disrepute.''

The respondent reviewed the case as described in the opinion and found and ordered: ''I find that the action of the police commissioner . . . (appointing authority) and of the civil service commission was justified and hereby affirm same.''

In the Superior Court, the petitioner presented fifteen requests for ''findings of fact and rulings of law.''

The first three requests were given. The third is discussed on pages 576, 577, *post*, of the opinion. It was as follows: ''3. The charges preferred against your petitioner alleged no misconduct on his part warranting any punitive action whatsoever unless there be read into such charges by implication the allegation that your petitioner knew or should have known that Robert T. Rollins was a convicted felon, he having been convicted of felony in the State of Pennsylvania in the year 1923, and unless there be read into the said charges the allegation that your petitioner knew or should have known that the designated persons in whose company

he found himself for a short time on April 27, 1946, had been that evening engaged in the commission of a felony."

Other requests were denied. Of these, the judge stated that those numbered 7, 8, 9, and 11 "are purely questions of fact and are, therefore, not dealt with."

As to requests numbered 12 and 13, the judge stated that they "state correct propositions of law but there is nothing in the record to show that the judge of the District Court did not so rule." The return disclosed that, at the hearing before the respondent, "No requests for rulings were made." These requests were as follows: "12. That the respondent judge should have ruled, as a matter of law, that the civil service commission in determining the guilt or innocence of your petitioner of the charges preferred against him, had no right to base its decision on anything beyond the findings made by the disinterested person . . .. 13. That the respondent judge should have ruled, as a matter of law, that the said civil service commission had no right to find your petitioner guilty of any offence not embraced within the charges already preferred against him."

Request numbered 10 was as follows: "10. That the said . . . commission in determining the guilt or innocence of your petitioner of the charges preferred against him, was bound, as a matter of law, by the findings of the disinterested person . . . adjudging him to be not guilty of the said charges." As to this request the judge ruled "that action by the civil service commission must be based upon the findings of the disinterested person, but not necessarily upon the conclusions from those findings."

Requests numbered 4, 5, 6, 14, and 15 were denied. They were as follows:

"4. The undisputed evidence adduced before the respondent . . . as to the conduct of the hearing before the police commissioner . . . consisting of a stenographic transcript of all the evidence offered at the said hearing before the said police commissioner, showed conclusively that there was no evidence offered before the said police commissioner warranting any finding by him that your present petitioner knew or should have known of the commission of a felony

by Rollins in the State of Pennsylvania in 1923, or that he knew or should have known that on the evening when your petitioner found himself in the company of the said Rollins and MacEachern . . . they had previously on the same evening committed a felony.

"5. That at the hearing before the respondent, . . . the conclusive evidence relating to the trial of your petitioner before the police commissioner . . . which evidence consisted of a copy of the charges on which your petitioner had been tried, a stenographic transcript of all the evidence offered at the trial before the said police commissioner, and the findings of fact and decision thereon, showed conclusively that many of the subsidiary findings of fact made by the said police commissioner, and on which his order of removal was based, had no support whatsoever in the evidence.

"6. At the trial of the case before the respondent, . . . there was no evidence whatsoever which would have warranted him in finding that the order of removal by the said police commissioner was properly made upon adequate reasons sufficiently supported by credible evidence.

"14. There was no evidence offered at the trial before the respondent ·. . . which would have warranted him in finding that the decision of the said civil service commission was justified.

"15. That as a matter of law, the decision of the respondent . . . should have been that the order of discharge by the police commissioner . . . and the confirmation thereof by the civil service commission, were both unjustified and should have been reversed by the respondent . . . with an order for the reinstatement of your petitioner."

The final order entered in the Superior Court was: "The proceedings before and judgment of the respondent are affirmed." The petitioner alleged exceptions.

*P. L. Keenan*, (*J. T. Bowes* with him,) for the petitioner.

*R. Clapp*, Assistant Attorney General, (*A. J. Gorey* with him,) for the respondent.

QUA, C.J. This petition for a writ of certiorari was brought in the Superior Court to quash a decision of the judge of the Municipal Court of the Roxbury District

wherein he found that action of the police commissioner of Boston discharging the petitioner from the police force of that city, after a hearing upon two specifications of conduct unbecoming an officer, and action of the civil service commission affirming the action of the police commissioner were justified, and whereby the respondent affirmed such action. G. L. (Ter. Ed.) c. 31, § 43, as appearing in St. 1945, c. 667, § 1 (see now St. 1947, c. 373, § 1). G. L. (Ter. Ed.) c. 31, § 45, as appearing in St. 1945, c. 667, § 2. The judge of the Superior Court ordered judgment affirming the proceedings before the respondent. G. L. (Ter. Ed.) c. 249, § 4, as amended by St. 1943, c. 374, § 1. See G. L. (Ter. Ed.) c. 213, § 1A, as last amended by St. 1941, c. 180. The case is here on exceptions to the refusal of the judge of the Superior Court to grant certain of the petitioner's requests for rulings.

General Laws (Ter. Ed.) c. 31, § 43 (b), as appearing in St. 1945, c. 667, § 1, provides that a person discharged by the appointing authority shall, if he so requests in writing, be given a hearing before a member of the civil service commission or some disinterested person designated by the chairman, who shall report his findings to the commission for action. The commission is to affirm the action of the appointing authority if it finds that such action was "justified." We interpret this as providing for a hearing de novo upon all material evidence and a decision by the commission upon that evidence and not merely for a review of the previous hearing held before the appointing officer. There is no limitation of the evidence to that which was before the appointing officer. The matter is still wholly in the administrative field. In this connection, we think that the word "justified" has no peculiar or technical signification. But the petition to the District Court which may be brought after the decision of the commission is, by the wording of G. L. (Ter. Ed.) c. 31, § 45, as appearing in St. 1945, c. 667, § 2, a petition for a *review* by the court of the action of the administrative officers to "determine whether or not upon all the evidence such action was justified." The scope under a statute of this type of a judicial review to determine whether the action

of an administrative officer in discharging or removing an officer or employee in the classified service was "justified" has been settled by a series of decisions. The difference between a review and "a retrial of the case as if it were unqualifiedly appealed from one court to another" was pointed out in *Mayor of Medford* v. *Judge of First District Court of Eastern Middlesex,* 249 Mass. 465, at pages 470–471, and in *Selectmen of Wakefield* v. *Judge of First District Court of Eastern Middlesex,* 262 Mass. 477, 482. "Review" indicates "a re-examination of a proceeding, already concluded, for the purpose of preventing a result which appears not to be based upon the exercise of an unbiased and reasonable judgment. It does not import a reversal of the earlier decision honestly made upon evidence which appears to an unprejudiced mind sufficient to warrant the decision made although of a character respecting the weight of which two impartial minds might well reach different conclusions, and upon which the reviewing magistrate, if trying the whole issue afresh, might make a different finding." *Murray* v. *Justices of the Municipal Court of the City of Boston,* 233 Mass. 186, 189. *Mayor of Somerville* v. *District Court of Somerville,* 317 Mass. 106, 109. *Board of Public Works of Arlington* v. *Third District Court of Eastern Middlesex,* 319 Mass. 638, and cases cited. "Justified" in connection with "review" means "done upon adequate reasons sufficiently supported by credible evidence, when weighed by an unprejudiced mind, guided by common sense and by correct rules of law." *Selectmen of Wakefield* v. *Judge of First District Court of Eastern Middlesex,* 262 Mass. 477, 482. *Costa* v. *District Court of Eastern Essex,* 305 Mass. 85.

The respondent's return to the Superior Court includes transcripts of the evidence before the police commissioner, the evidence before the civil service commissioners, both of which transcripts were put in evidence before the respondent, and also of the evidence taken before the respondent himself. By virtue of G. L. (Ter. Ed.) c. 249, § 4, as amended by St. 1943, c. 374, § 1, it was "open to the petitioner to contend at the hearing upon the petition [for certiorari] that the evidence which formed the basis of the action com-

plained of or the basis of any specified finding or conclusion was as matter of law insufficient to warrant such action, finding or conclusion." It was therefore proper for the respondent to include this evidence in his return, whether or not such inclusion would have been proper before the amendment of 1943. *Tracht* v. *County Commissioners of Worcester*, 318 Mass. 681, 687. See Common Law Rule 34, 317 Mass. 774. Compare *Murphy* v. *Third District Court of Eastern Middlesex*, 316 Mass. 663, 667.

The evidence before the police commissioner tended to show these facts: Some time before April 27, 1946, the officers of Division 16 had been notified at roll call that an automobile bearing a certain number was "suspected of going around on robberies and larcenies from the person." About 1:40 o'clock on the morning of that day a report came in from one Ranger that his wallet had been stolen on Arlington Street near Boylston Street. At about 2:20 that morning Officer Dyer of Division 16 saw the suspected automobile stop at a Chinese restaurant on Boylston Street, known as the "Green Pagoda." Three men got out and went into the restaurant. Ranger's wallet and another wallet were found by police in the automobile. Thereupon the three men were arrested in the restaurant by officers of Division 16 and were taken to Station 16 in the patrol wagon. One of the men was one Rollins, who had stolen Ranger's wallet. One was MacEachern, who owned the automobile. The third man was the petitioner, who was attached to Division 19 but was off duty at the time. When arrested, after a few questions had been asked, the three men were "frisked" and a blackjack not supplied to him by the department was found in the petitioner's pocket. To carry this was a violation of a rule of the department. When asked what he was doing with it, the petitioner for the first time disclosed that he was a police officer. When the patrol wagon reached the station two additional wallets were found in it near the place where the petitioner had sat. The petitioner said he had known the other two men for about a year. The petitioner's own story was that he slept until about eleven o'clock on the night of the twenty-

sixth and then got up and stayed around the corner of Dudley and Warren streets near his home talking with different people until nearly two o'clock of the twenty-seventh, when MacEachern came along in his automobile and invited the petitioner to go and eat. Rollins came toward them, and all three rode to the "Green Pagoda." The petitioner testified that he was not intimate with these men but had seen them around the corner for about a year, and that he knew nothing of the wallets and did not know that Rollins had a criminal record.

The evidence before the "disinterested person" designated by the chairman of the civil service commission to hear the matter in accordance with G. L. (Ter. Ed.) c. 31, § 43 (b), as appearing in St. 1945, c. 667, § 1, tended to show the further facts that the MacEachern automobile in which the petitioner rode was driven without lights; that a period of five minutes elapsed while the arresting officers were talking with the three men and were "frisking" them before the blackjack was found on the petitioner and he made known the fact that he was a police officer; that at the police station on the afternoon of the twenty-seventh the petitioner told the captain in substance that when he was getting into the patrol wagon he heard a thud as if the wallets were thrown into the wagon by someone back of him (presumably MacEachern or Rollins); and that when asked why he had not told that story before his only reply was that he did not want to be a stool pigeon. It appeared that Rollins had a serious criminal record and MacEachern a record of minor offences. The "disinterested person" found the facts substantially in accordance with the evidence outlined above and came to the conclusions that the petitioner's attitude and failure to coöperate with the other officers at the time of his arrest and while in custody were not conduct becoming an officer and should "not go unnoticed for appropriate disciplinary action," but that the petitioner was not guilty as specifically charged in the two specifications. The commissioners, however, were not bound by the ultimate conclusions of the "disinterested person." They could rest their own decision upon his subsidiary

findings. The commissioners' action is their own and is not that of the "disinterested person." G. L. (Ter. Ed.) c. 31, § 43 (b), as appearing in St. 1945, c. 667, § 1.

The respondent at the hearing before him heard some of the witnesses who had previously testified, but nothing new of importance developed. The duty of the respondent was to "review" the entire proceedings from beginning to end to determine "upon all the evidence" whether the discharge of the petitioner was "justified." G. L. (Ter. Ed.) c. 31, § 45, as appearing in St. 1945, c. 667, § 2.

The petitioner's requests for rulings can be dealt with according to the subject matters presented without taking up each separate request.

In order to hold the discharge of the petitioner justified it was not necessary that there be evidence warranting findings that the petitioner knew that his two companions, MacEachern and Rollins, or either of them, was a criminal or that either of them had committed a crime on the night in question. Without saying that such findings would not have been warranted, at the very least it must have been apparent to the petitioner that he was being arrested in circumstances calculated to create a strong suspicion not only of knowledge of what his companions had done but even of guilt on his own part. Conduct becoming a police officer demanded that he should instantly dissociate himself from his companions and clearly align himself on the side of law and order. This he conspicuously failed to do. He waited until the blackjack was actually discovered in his clothing before even mentioning that he was a police officer. At the station, when charged with not having made a full disclosure of all he knew about the wallets, his answer was merely that he did not want to be a stool pigeon. The point need not be labored. The evidence was plainly sufficient to justify his discharge from the police force.

There is nothing in the contention that by granting the petitioner's third request the judge established "the law of the case" to the effect that the petitioner could not be discharged on the charges preferred unless he knew or should have known that Rollins was a convicted felon and that

Rollins and MacEachern had been guilty of a felony on the night in question. *Freeman* v. *Robinson*, 238 Mass. 449, 451. *Slocum* v. *Natural Products Co.* 292 Mass. 455, 458. *Rathgeber* v. *Kelley*, 299 Mass. 444, 446. This is not an instance where a case has been tried or has been submitted to a jury under a ruling to which no exception was taken, which governed the subsequent course of the proceedings, and which therefore cannot afterwards be disputed. *Santa Maria* v. *Trotto*, 297 Mass. 442, 447. *Horton* v. *North Attleborough*, 302 Mass. 137, 141.

No sound objection can be made that the petitioner's discharge by reason of his conduct, even without knowledge on his part that his companions or either of them was a criminal or had committed a crime on the night in question, was beyond the scope of the specifications. The specifications were perhaps somewhat broadly drawn, but they plainly pointed to the petitioner's conduct in connection with his arrest on April 27, 1946, as the basis of the charge against him. We think that all of his conduct on that occasion could be considered in all its bearings. At the hearings the petitioner had the fullest opportunity to present his defence in every aspect. It is plain that as a practical matter additional or more detailed specification could not have helped him, and that he was not prejudiced by lack of it. Proceedings for discharge of persons in the classified service are often conducted by laymen. The requirements of substantial justice must be observed, but the technical accuracy of indictment and trial in a criminal court cannot be expected. *McCarthy* v. *Emerson*, 202 Mass. 352, 354. *Swan* v. *Justices of the Superior Court*, 222 Mass. 542. *Graves* v. *School Committee of Wellesley*, 299 Mass. 80, 86. *Lowry* v. *Commissioner of Agriculture*, 302 Mass. 111, 117. *Higgins* v. *License Commissioners of Quincy*, 308 Mass. 142, 145–146. *Moran* v. *School Committee of Littleton*, 317 Mass. 591, 596. Moreover, it does not appear that before the respondent or at any other time in the course of the proceedings the petitioner made any objection to the specifications or any contention that the hearings or the decisions made extended beyond the specifications. *Mayor of Medford* v. *Judge of*

*First District Court of Eastern Middlesex*, 249 Mass. 465, 471–472. Substantial justice was done so far as respects the form of the accusation. *Whitney* v. *Judge of the District Court of Northern Berkshire*, 271 Mass. 448, 458–463.

Certain inaccuracies in the subsidiary findings of the police commissioner have become unimportant in view of the full hearing subsequently held before the disinterested person appointed by the chairman of the civil service commission, his ample findings of subsidiary facts, and the independent decision of the commission.

We have dealt with all points presented and argued.

*Exceptions overruled.*