CITY OF LEOMINSTER *vs.* WARDEN L. STRATTON & another.[1]

No. 01-P-103.

Suffolk. January 14, 2003. - August 5, 2003.

Present: RAPOZA, KASS, & DOERFER, JJ.

*Civil Service,* Decision of Civil Service Commission, Findings by commission, Judicial review, Police. *Administrative Law,* Judicial review, Substantial evidence. *Public Employment,* Police, Removal.

A Superior Court judge erred in concluding that the Civil Service Commission (commission) had acted arbitrarily in ordering the reinstatement of a police officer who had been discharged by a city's police chief on the basis of domestic sexual abuse complaints, following a removal hearing conducted conformably with G. L. c. 31, § 41, where the findings of the administrative magistrate who conducted a hearing on behalf of the commission, to the effect that the charges against the police officer were not proved, were supported by substantial evidence, and should not have been set aside. [732-733]

CIVIL ACTION commenced in the Superior Court Department on July 1, 1999.

The case was heard by *Allan van Gestel,* J., on a motion for judgment on the pleadings.

*Joseph G. Donnellan* for Warden L. Stratton.

*Joseph L. Tehan, Jr.,* for the plaintiff.

KASS, J. Warden L. Stratton was a police officer in Leominster (city), against whom a stepdaughter and daughter made complaints of sexual abuse. That conduct and domestic abuse by Stratton of his wife were the basis for his discharge from the police force by the mayor of Leominster, following a removal hearing conducted by the police chief of that city, conformably with G. L. c. 31, § 41. At the tail end of multiple administrative and judicial proceedings — which we shall presently describe — a judge of the Superior Court concluded that the Civil

---

[1]Civil Service Commission.

Service Commission (commission) had acted irrationally, hence, surely arbitrarily, in ordering Stratton's reinstatement. We think that the findings of the administrative magistrate, to the effect that the charges against Stratton were not proved, had support in substantial evidence, and should not have been set aside by the Superior Court judge. We, therefore, reverse the judgment.

1. *Standards of review.* a. *For the commission.* Under G. L. c. 31, § 43, a person aggrieved by a decision of the appointing authority (in this case the city) made pursuant to G. L. c. 31, § 41, may appeal to the commission. It is the duty of the commission to determine, applying a "preponderance of the evidence" criterion, whether "there was just cause" for the action taken. G. L. c. 31, § 43.

In performing that function, the commission does not view a snapshot of what was before the appointing authority. Were that determinative, this case would resolve in favor of the city. There was evidence before the police chief, who conducted the discharge hearing on behalf of the city, in the form of grand jury minutes that contained lurid descriptions of sexual abuse by Stratton of his stepdaughter, Leslie, and his daughter, Harriet.[2] Also presented was a domestic abuse order against Stratton that had been extended the previous month. Although counsel appeared for Stratton at the discharge hearing, Stratton did not testify in his defense. At the police chief's request, Stratton underwent a polygraph examination. The examiner gave an opinion that Stratton had failed the test. With unrebutted evidence against Stratton, the police chief had a basis for discharging him for conduct unbecoming a police officer.

In performing its § 43 review, however, the commission hears evidence and finds facts anew. Examining an earlier but substantially similar version of the same statute, the court in *Sullivan* v. *Municipal Ct. of the Roxbury Dist.*, 322 Mass. 566, 572 (1948), said: "We interpret this as providing for a hearing de novo upon all material evidence and a decision by the commission upon that evidence and not merely for a review of the previous hearing held before the appointing officer. There is no limitation of the evidence to that which was before the appointing officer." For the commission, the question is "not whether it

---

[2]These are fictitious names.

would have acted as the appointing authority had acted, but whether, on the facts found by the commission, there was reasonable justification for the action taken by the appointing authority in the circumstances found by the commission to have existed when the appointing authority made its decision." *Watertown* v. *Arria*, 16 Mass. App. Ct. 331, 334 (1983). See *Commissioners of Civil Serv.* v. *Municipal Ct. of Boston*, 369 Mass. 84, 86 (1975); *Murray* v. *Second Dist. Ct. of E. Middlesex*, 389 Mass. 508, 509, 513 (1983); *Green* v. *Brookline*, 53 Mass. App. Ct. 120, 121-122 (2001); *Houde* v. *Contributory Retirement Appeal Bd.*, 57 Mass. App. Ct. 842, 851 n.12 (2003).

b. *For the Superior Court.* Any party aggrieved by a decision of the commission may obtain judicial review in Superior Court. G. L. c. 31, § 44. In that court, the proceedings are distinctly not de novo; it is not the occasion for a retrial of the case. *Sullivan* v. *Municipal Ct. of the Roxbury Dist.*, 322 Mass. at 572-573. Section 44 provides that the judicial review shall be conducted conformably with judicial review of administrative agency decisions, i.e., as prescribed in G. L. c. 30A, § 14. The reviewing court is, therefore, bound to accept the findings of fact of the commission's hearing officer, if supported by substantial evidence. *School Comm. of Boston* v. *Board of Educ.*, 363 Mass. 125, 128 (1973). *Watertown* v. *Arria*, 16 Mass. App. Ct. at 334. *McIsaac* v. *Civil Serv. Commn.*, 38 Mass. App. Ct. 473, 476 (1995). *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 257 (1996). *School Comm. of Brockton* v. *Civil Serv. Commn.*, 43 Mass. App. Ct. 486, 490 (1997). The open question on judicial review is whether, taking the facts as found, the action of the commission was legally tenable. *Id.*, and cases there cited.

2. *The commission proceedings.* Stratton appealed from his dismissal by the city to the commission, in accordance with G. L. c. 31, § 43. A magistrate from the Division of Administrative Law Appeals conducted the evidentiary hearing and made findings of facts and a recommendation for decision to the commission. Reduced to lowest terms, the magistrate found that the misconduct charged against Stratton had not occurred. The magistrate had found the testimony of the accusers inconsistent. Not the least unsettling was the wholesale recantation by Strat-

ton's biological daughter, Harriet, of her accusations of sexual abuse by her father and her explanation that her mother had put her up to it. No witness, the magistrate wrote, confirmed the testimony of another. He concluded that the city had not carried its burden of proof. The commission accepted the recommendation of the magistrate that Stratton be restored to his office without loss of compensation.

From that decision, the city sought judicial review under G. L. c. 31, § 44. The Superior Court judge who reviewed the record determined that the findings of the magistrate were not supported by substantial evidence. The magistrate had concentrated on inconsistencies that, upon careful examination of the record by the judge, were not obviously inconsistent. Witness by witness, the judge found the magistrate's findings, both subsidiary and ultimate, "troubling." In his decision, the magistrate had written, "If everyone is to be believed then, no one can be believed." This, the judge thought, was a less than satisfactory resolution of factual questions raised by the record.

The Superior Court judge recognized that assessing the credibility of witnesses is a preserve of the finder of fact upon which a court conducting judicial review treads with great reluctance. *Springgate* v. *School Comm. of Mattapoisett*, 11 Mass. App. Ct. 304, 309-310 (1981). Although she concluded that the magistrate had either "failed adequately to address necessary credibility issues or based his judgments on reasons that the evidence did not support[,]" the judge determined that on the record she was unable to "conclude that a judgment in favor of the city is required." Rather, she remanded the case to the commission for a more adequate explanation of credibility determinations and reasons for concluding that the city had not made out its case for discharging Stratton from the force. The judge hinted that the commission might choose to order another hearing before another magistrate.

The commission took the hint and a new full-blown hearing was conducted before the chief administrative magistrate of the Division of Administrative Law Appeals. This time, neither the stepdaughter nor the biological daughter (the one who had recanted) testified. The second magistrate also determined that the alleged abuse of Stratton's stepdaughter, daughter, and his

second wife, Winnifred, had not occurred. The second magistrate made forty-five subsidiary findings of fact. From those findings he drew ultimate findings. He found that since Harriet had disavowed her allegations against Stratton in the prior hearing and had not testified at the second hearing, the charge of abuse of Harriet had not been proved. He did not believe Winnifred Stratton's testimony that her husband had abused Harriet and found that Winnifred had encouraged Harriet to lie.[3]

Both in his subsidiary and ultimate findings, the second magistrate declared that he did not believe Winnifred's testimony. She and Stratton had divorced. He found ultimately that she was angry, vindictive, and "on a mission to get her then husband." Her claims of spousal abuse, the second magistrate found, were contrived.

The second magistrate discounted entirely the results of the polygraph examination of Stratton. He did so on the ground that the control questions asked by the polygraph examiner were poorly structured. In that regard, the second magistrate followed a pattern set by the first. As to Leslie's biological father and his wife, who testified as witnesses for the city, the second magistrate found them to be obsessed with Stratton having made gifts to the children that they thought inappropriate. The second magistrate stated in his ultimate findings that their testimony "was made up to implicate [Stratton]." Throughout the proceedings, there had been testimony of a minister (Pastor Burke) to whom Stratton had brought Leslie for counseling. There were aspects of Leslie's behavior at age fifteen that made Stratton apprehensive that she was abusing drugs. Leslie made charges about abuse by her stepfather during the counseling sessions with Pastor Burke. This was revealed to Stratton at a family meeting. The second magistrate found the recollection of

---

[3]The second magistrate did not comment on the testimony of a social worker from the Department of Social Services who had investigated a notification under G. L. c. 119, § 51A, that Stratton had abused his daughter Harriet. The social worker thought the complaint substantiated and placed Stratton's name on a departmental registry of *alleged* sex abuse offenders. The first magistrate had made a finding that an earlier § 51A allegation made in 1985 had not been supported. Given that finding, Harriet's recantation, and her failure to appear at the second hearing, the second magistrate was not bound to deal expressly with what he thought about the social worker's testimony.

participants at the family meeting, including that of Pastor Burke, sufficiently vague so that he did not credit the testimony about what had passed at that meeting.

The most detailed charge against Stratton was that made by Leslie, the stepdaughter, and she had not recanted. Now resident in Florida, married, and the mother of three children, Leslie, who had testified at the first commission hearing, refused to come up and testify again. That left the second magistrate with her testimony, under oath and subject to cross-examination, from the first hearing. The second magistrate reviewed that testimony, but said that he gave that recorded testimony less weight than the testimony of present witnesses whose credibility he could assess by having them before him in the flesh. Stratton was present at the second hearing, testified, and denied the abuse charge. The second magistrate found Stratton to be a truthful witness.

In his decision, the second magistrate faced squarely the terms of the remand from the Superior Court judge. On the record, his findings and conclusion are not without support. We may well have come to different conclusions but precisely because so much of the second magistrate's decision hangs on questions of credibility we are bound, as discussed above, to defer. See *Commissioners of Civil Serv.* v. *Municipal Ct. of Boston*, 369 Mass. at 89-90. Contrast *Springgate* v. *School Comm. of Mattapoisett*, 11 Mass. App. Ct. at 311-316, a rare instance in which a reviewing court thought that the trial judge's findings of fact and implicit judgments about the credibility of witnesses were clearly erroneous.

Once again, the commission adopted the second magistrate's decision and once again the city sought judicial review. The matter came before a different — the second — Superior Court judge. The second judge examined the evidence presented to the mayor of Leominster through the police chief, which the second judge described as "unchallenged by Stratton, as it then was," and voiced his opinion that "Stratton's conduct was clearly shown to be conduct unbecoming a police officer." "No rational explanation can be given by this Court to the reasonable citizens of Leominster," the second judge continued, "for a decision of the Civil Service Commission that compels that

community to badge, arm and retain Stratton on its police force. Public policy requires just the contrary."

The second judge erred in two respects. First, as discussed above, commission proceedings under G. L. c. 31, § 43, involve finding afresh the facts on which the employment action was based. The second judge could not, as he did, focus on the evidence before the police chief prior to commission review. Second, the cases on which the second judge relied for his conclusion that the commission could not second guess the police chief involved situations in which the commission concurred — at least substantially — with the facts about the conduct of the governmental employee that provoked discipline by the appointing authority and disagreed solely about the appropriate sanction for that conduct. So, for example, in *Cambridge* v. *Civil Serv. Commn.*, 43 Mass. App. Ct. 300 (1997), the commission found, as had the appointing authority, that a candidate for a position as a police officer had lied about her involvement in a shooting incident and had been the subject of a criminal complaint for assault and battery. Given those facts, it was beyond the authority of the commission to interfere with the city's managerial decision not to hire the candidate as a police officer. *Id.* at 304-305. Similarly, in *Police Dept. of Boston* v. *Collins*, 48 Mass. App. Ct. 408, 413 (2000), we held that the commission had improperly substituted its judgment for that of the appointing authority when it decided that a five-day suspension was excessive discipline, even though the commission agreed that the police officer in question had acted contumaciously toward a superior officer. See *Debnam* v. *Belmont*, 388 Mass. 632, 635-636 (1983); *Faria* v. *Third Bristol Div. of the Dist. Ct. Dept.*, 14 Mass. App. Ct. 985, 987 (1982); *Police Commr. of Boston* v. *Civil Serv. Commn.*, 22 Mass. App. Ct. 364, 369-372 (1986); *Commissioner of Health & Hosps. of Boston* v. *Civil Serv. Commn.*, 23 Mass. App. Ct. 410, 413 (1987). Contrast *McIssac* v. *Civil Serv. Commn.*, 38 Mass. App. Ct. at 474, in which the appointing authority, the commission, and the reviewing court concurred that disorderly conduct by a police officer warranted his discharge from the police force.

In the case before us, the distinguishing element is that the commission found that the facts justifying discharge from the

police force did not exist. The administrative record in this case does not permit the reviewing court — in this case the Superior Court — to substitute its judgment for the commission's on questions of fact. *Id.* at 476. Under the substantial evidence test, the reviewing court may not make new determinations of facts or make different credibility choices. *Pyramid Co.* v. *Architectural Barriers Bd.*, 403 Mass. 126, 130 (1988). Those guiding principles are, as we previously observed, subject to the limitation that the judge may find the findings of the hearing magistrate without support in the record. That appears to have been the view of the second Superior Court judge who disposed of the commission's action as arbitrary and capricious. Neither our review of the record, however, nor any analysis by the second judge of the record justifies that characterization of the commission's decision or the findings on which it was based.

The judgment is reversed and the order of the commission that Stratton shall be restored to his office without loss of compensation is reinstated.

*So ordered.*