BENJAMIN McGUINESS & another[1] vs. DEPARTMENT OF
CORRECTION & another.[2]

Suffolk. March 5, 2013. - July 1, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Civil Service,* Decision of Civil Service Commission, Judicial review, Termina-
tion of employment. *Administrative Law,* Decision, Proceedings before
agency. *Commissioner of Correction. Correction Officer. Employment,*
Termination. *Public Employment,* Termination.

This court concluded that a tie vote by the Civil Service Commission (com-
mission) in an appeal from a decision of the Department of Correction
(department) to terminate two employees constituted a failure to act, with
the result that the initial decision of the hearing officer affirming the
department's termination order became the final decision of the commis-
sion, and thus the hearing officer's findings of fact were preserved for
review on appeal under a substantial evidence standard [662-668]; further,
this court concluded that, even accepting that the commission did not
adopt the hearing officer's findings of fact by majority vote, substantial
evidence existed to support the hearing officer's findings of fact and deci-
sion affirming the department's termination order [668-670].

CIVIL ACTION commenced in the Superior Court Department on
July 10, 2008.

The case was heard by *Frances A. McIntyre,* J., on motions
for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Stephen C. Pfaff* for the plaintiffs.

*Carol A. Colby* for Department of Correction.

*Robert L. Quinan, Jr.,* Assistant Attorney General, for Civil
Service Commission, was present but did not argue.

SPINA, J. This case concerns the effect of a tie vote on the
Civil Service Commission (commission) in an appeal from a

[1]Richard Mullen.
[2]Civil Service Commission.

decision of the Department of Correction (department) to terminate two employees. On this record, we conclude that the effect of the tie vote was that the initial decision of the hearing officer affirming the department's termination order became the final decision of the commission, which, in turn, is subject to judicial review.

1. *Background.* The plaintiffs, Benjamin McGuiness and Richard Mullen, were employees of the department, assigned to the Massachusetts Alcohol and Substance Abuse Center. In 2005, the department terminated the plaintiffs' employment because of allegations that they used excessive force against an inmate in violation of the internal rules of the department and 103 Code Mass. Regs. § 505 (2009). See G. L. c. 31, § 41 (just cause). The termination arose out of an incident in which Mullen was alleged to have punched and to have twisted an inmate's wrists, and McGuiness was alleged to have walked on the inmate's legs, after the inmate had been placed in wrist restraints following a fight with a fellow inmate. The plaintiffs appealed the termination order to the commission, where a hearing was held before a single commissioner. See G. L. c. 31, § 43. Following the recommendation of the single commissioner, the commission voted three-to-two in favor of the plaintiffs and ordered that they be reinstated. The department sought judicial review under G. L. c. 31, § 44. A judge in the Superior Court reversed the commission's decision to reinstate the plaintiffs and remanded the case to the commission with instructions that the single commissioner who conducted the hearing no longer participate in the case. See A.J. Cella, Administrative Law and Practice § 312 (1986) (Cella). Conformably with G. L. c. 31, § 43, which provides that "a person aggrieved by a decision of an appointing authority . . . shall be given a hearing before a member of the commission or some disinterested person designated by the chairman of the commission," the plaintiffs then received a de novo hearing before an administrative magistrate of the Division of Administrative Law Appeals (DALA). See generally Cella, *supra* at § 347, at 645-647 & n.20. The DALA magistrate recommended that the commission affirm the department's decision to terminate the plaintiffs' employment. Because the Superior Court order precluded the participation of the single commissioner who

conducted the plaintiffs' first hearing, only four of the five members of the commission voted on whether to adopt the DALA magistrate's findings of fact and recommended decision. See *id.* at § 1010. The vote resulted in a two-to-two tie. Consequently, the commission "dismissed" the plaintiffs' appeal. The plaintiffs then sought review of the "dismissal" order in the Superior Court. The Superior Court judge likewise concluded that the tie vote had the effect of dismissing the plaintiffs' appeal and, therefore, upheld the department's termination order. Significantly, the judge also determined that, "[w]ithout a majority vote, the [commission] did not *adopt* the recommended decision of the DALA [magistrate]" (emphasis supplied). Notwithstanding this view, the judge engaged in an alternative analysis in which she determined that the DALA magistrate's decision to affirm the plaintiffs' termination was supported by substantial evidence. See G. L. c. 30A, § 14. The plaintiffs sought review of the Superior Court judgment in the Appeals Court, and we transferred their appeal to this court on our own motion to bring clarity to the issue of the effect of a tie vote of the commission.

2. *Discussion.* General Laws c. 31, § 2, prescribes the powers and duties of the commission. Read together with G. L. c. 31, § 2 (*c*),[3] G. L. c. 31, § 2 (*b*), states that the commission may:

> "[H]ear and decide appeals by a person aggrieved by any decision, action, or failure to act by the [appointing authority], . . . provided that *no decision or action of the [appointing authority] shall be reversed or modified* nor shall any action be ordered in the case of a failure of the [appointing authority] to act, *except by an affirmative vote of at least three members of the commission*" (emphases supplied).

The standard adjudicatory rules of practice and procedure (standard rules), 801 Code Mass. Regs. §§ 1.00 (1998), which apply to adjudications before the commission, also are relevant.[4] In pertinent part, 801 Code Mass. Regs. § 1.01(11) states:

---

[3]General Laws c. 31, § 2 (*c*), provides that "administrator shall be taken to mean the local appointing authority" in G. L. c. 31, § 2 (*b*). See G. L. c. 31, § 1.

[4]In the early stages of this case, it was unclear whether the commission

"(b) *Initial Decisions.* A Presiding Officer[5] other than the Agency who presided at the reception of evidence shall render a decision as provided in [G. L.] c. 30A, § 11 (8). The decision of the Presiding Officer shall be called an initial decision. . . .

"(c) *Tentative Decisions.* If the Agency elects to render a decision on the record without having presided at the reception of evidence, either by regulation or by statement in the notice scheduling the hearing, the initial decision shall also become a tentative decision.

". . .

"3. *Failure to Issue Final Decision.* If the Agency fails to

adheres to the standard adjudicatory rules of practice and procedure (standard rules). 801 Code Mass. Regs. §§ 1.00 (1998). There was ambiguity on this point of fact because the standard rules were promulgated pursuant to the Administrative Procedure Act, G. L. c. 30A, and the commission is expressly exempt from its provisions. G. L. c. 30A, § 1. See A.J. Cella, Administrative Law and Practice § 13, at 46 (1986) (Cella). Therefore, the commission is not required to adhere to the standard rules. See *Falmouth* v. *Civil Serv. Comm'n,* 447 Mass. 814, 817 n.4 (2006). It may, however, adopt the standard rules voluntarily. *Id.* Initially, the commission submitted a memorandum stating that it does not adhere to the standard rules. Following the plaintiffs' assertion at oral argument that the commission's Web site provides just the opposite, the commission filed a letter pursuant to Mass. R. A. P. 16 (l), as amended, 386 Mass. 1247 (1982), acknowledging that it does, in fact, adhere to the standard rules. We now regard the applicability of the standard rules as a stipulated fact. To avoid similar confusion in the future, the commission should publish the fact of its compliance with the standard rules in the Code of Massachusetts Regulations. See *Fox* v. *Commissioner of Revenue,* 51 Mass. App. Ct. 336, 341 n.5 (2001), *S.C.,* 68 Mass. App. Ct. 1118 (2007). Such publication will allow subsequent courts to take judicial notice of the commission's choice to adhere to the standard rules. See Mass. G. Evid. § 202 (2013). Moreover, we note that "a [S]tate administrative agency having promulgated a rule or regulation . . . is bound to respect and enforce the rule as long as it remains extant." Cella, *supra* at § 725, at 100-101.

[5]Title 801 Code Mass. Regs. § 1.01(2)(c) defines the "[p]residing [o]fficer" as "[t]he individual(s) authorized by law or designated by the [a]gency to conduct an [a]djudicatory [p]roceeding." The presiding or hearing officer in this case was an administrative magistrate of the Division of Administrative Law Appeals (DALA). Because G. L. c. 31, § 43, permits "a hearing before a member of the commission or some disinterested person designated by the chairman of the commission," the fact that the hearing officer was a DALA magistrate as opposed to a member of the commission makes no difference to our analysis.

issue a final decision within 180 days of the filing or re-
filing of the tentative decision, the initial decision shall
become the final decision of the Agency, not subject to
further Agency review.

"(d) *Final Decisions.* . . . A majority of the members
constituting the Agency or the Agency panel authorized by
the Agency to decide the case shall make direct Agency
decisions."

Focusing on 801 Code Mass. Regs. § 1.01(11)(d), the plain-
tiffs contend that a majority vote is required for the commission
to adopt the DALA magistrate's decision affirming their ter-
minations. A tie vote, according to the plaintiffs, rendered the
DALA magistrate's decision a nullity, leaving them without a
final decision by the commission regarding their employment
status.[6] Focusing on G. L. c. 31, § 2 (*b*), the department counters
that its decision to terminate the plaintiffs' employment stands
because the plaintiffs did not receive the three votes necessary
to reverse or modify it. As a point of commonality, the plaintiffs
and the department agree with the Superior Court judge that,
because there was no majority vote, the commission did not
*adopt* the DALA magistrate's decision. In yet a third alterna-
tive, the commission suggests that 801 Code Mass. Regs.
§ 1.01(11)(c)(3) — which provides that the "initial decision
shall become the final decision of the Agency" in the event that
the commission fails to issue a final decision — governs here.
"Ordinarily an agency's interpretation of its own rule is entitled
to great weight." *Finkelstein* v. *Board of Registration in Optom-
etry*, 370 Mass. 476, 478 (1976). See *Udall* v. *Tallman*, 380
U.S. 1, 16-17 (1965), quoting *Bowles* v. *Seminole Rock & Sand
Co.*, 325 U.S. 410, 413-414 (1945). Although we acknowledge

---

[6]The plaintiffs also submit that the commission failed to make appropriate
response to their objections to the DALA magistrate's initial decision as
required by 801 Code Mass. Regs. § 1.01(11)(d). In its decision, the commis-
sion acknowledged the plaintiffs' comments and gave them "careful review
and consideration." In light of the circumstances of voting deadlock, we
conclude that this constituted an "appropriate response" in satisfaction of 801
Code Mass. Regs. § 1.01(11)(d). Moreover, the plaintiffs had an adequate op-
portunity to voice their objections to the DALA magistrate's decision in the
Superior Court and before us.

the commission's inability to take affirmative action, we agree with the commission that, on the narrow record here, the findings of fact and decision of the DALA magistrate affirming the department nevertheless became the final decision of the commission on account of the voting deadlock.

Title 801 Code Mass. Regs. § 1.01(11)(d) states a common-sense principle that, as a general matter, a majority is required for the commission to take affirmative action. General Laws c. 31, § 2 (b), provides that a specific number of votes is required to "reverse[] or modif[y]" the decision of an appointing authority.[7] In mandating three votes only to "reverse[] or modif[y]," this provision implicitly establishes affirmance of the appointing authority's decision as the default position. That the decision of the appointing authority stands, absent three votes to the contrary, comports with the limited "purposes of the civil service system — to guard against political considerations, favoritism, and bias in governmental employment decisions. . . . It is not within the authority of the commission . . . to substitute its judgment about a valid exercise of discretion based on merit or policy considerations by an appointing authority." *Falmouth* v. *Civil Serv. Comm'n*, 61 Mass. App. Ct. 796, 800 (2004), quoting *Cambridge* v. *Civil Serv. Comm'n*, 43 Mass. App. Ct. 300, 304 (1997). Title 801 Code Mass. Regs. § 1.01(11)(c)(3) fills the evidentiary gap left in the event of default, by transforming the initial decision of the hearing officer into the final decision of the commission.

Here, we have the rare circumstance of a tie vote that inhibited the commission's ability to act affirmatively in response to the DALA magistrate's initial decision recommending affirmance of the department's termination order. 801 Code Mass. Regs. § 1.01(11)(d). In that sense, we agree with the parties that the commission did not adopt the DALA magistrate's recommenda-

[7]Legislative statutes trump administrative agency regulations in the event that the two are in conflict. See *Massachusetts Mun. Wholesale Elec. Co.* v. *Energy Facilities Siting Council*, 411 Mass. 183, 194 (1991). Therefore, a hearing officer's initial decision recommending modification or reversal of an appointing authority's decision that does not garner the votes of three members of the commission cannot automatically become the final decision of the commission. G. L. c. 31, § 2 (b). Because that is not the circumstance of this case, we do not consider it further.

tions by vote. However, we conclude that the voting deadlock in this case constituted a failure to act. 801 Code Mass. Regs. § 1.01(11)(c)(3). Of course, the commission did not fail to act for want of effort; it did not act because it could not, given the voting deadlock. Regardless of the reason, and in accordance with G. L. c. 31, § 2 (*b*), and 801 Code Mass. Regs. § 1.01(11)(c), the commission's failure to make a final decision resulted in the DALA magistrate's initial decision affirming the department's termination order becoming the final decision of the commission by default.[8]

That the DALA magistrate's findings of fact and initial decision became the final decision of the commission in this case reflects the expanded role of the hearing officer in modern administrative agency adjudications. See generally A.J. Cella, Administrative Law and Practice §§ 341, 349-353 (1986) (Cella).

> "[A]s the institution of the hearing officer [or] examiner gained acceptance in the administrative process, the potentialities for broader utilization of the hearing officer or examiner came to be recognized. . . . In time, the essentially passive function of receiving and organizing evidentiary submissions for the ultimate administrative determination of others charged with authority to make such decisions yielded to the significantly more active and far more important function of contributing to the ultimate administrative determination through the filing of a report summarizing the evidence, making findings of fact and conclusions of law, and recommending dispositive administrative action."

*Id.* at § 341, at 631-632. Certainly, the commission cannot (and did not) agree to a "complete subdelegation of the entire adjudicatory function" to a hearing officer. *Id.* at § 347, at 648 & n.26. The commission undoubtedly holds the "ultimate adjudicatory decisionmaking authority" and generally is "not bound by the ultimate conclusions of the hearing officer or examiner." *Id.* at

---

[8]An initial decision becomes the final decision of the commission when the commission communicates its inability to act on account of a voting deadlock. Thereafter, an aggrieved party may seek judicial review under G. L. c. 31, § 44; it need not wait 180 days from the issuance of the initial decision. See 801 Code Mass. Regs. § 1.01(11)(c).

§§ 349, 350. See *Commissioner of Revenue* v. *Lawrence*, 379 Mass. 205, 209-210 (1979); *Sullivan* v. *Municipal Court of the Roxbury Dist.*, 322 Mass. 566, 575-576 (1948). See also G. L. c. 31, § 2 (*b*), (*c*); G. L. c. 31, § 43. That 801 Code Mass. Regs. § 1.01(11)(c) transforms a hearing officer's tentative decision into the final decision of the commission nevertheless reflects a "willingness to give increased dignity and weight to the decisions of the hearing officer or examiner," at least in the unusual event of the commission's failure to act. Cella, *supra* at § 341, at 632.

At first blush, our conclusion that the effect of the tie vote was that the DALA magistrate's decision to *affirm* the department's termination order[9] became the final decision of the agency may appear no different from the Superior Court judge's conclusion that the effect of the tie vote was to *dismiss* the plaintiffs' appeal. As the Superior Court judge noted, the department's decision to terminate the plaintiffs' employment stands either way. The difference concerns what remains for a judge to review in the event of a tie vote. It is without dispute that the plaintiffs have a "statutory right or entitlement to judicial review" of final decisions of the commission pursuant to G. L. c. 31, § 44, under the standards set forth in G. L. c. 30A, § 14. Cella, *supra* at § 1542, at 90; *id.* at § 1756, at 318. A consequence of the Superior Court judge's analysis that a tie vote dismisses the plaintiffs' appeals without *adopting* the DALA magistrate's decision, however, is that the DALA magistrate's findings of fact had no continuing relevance on appeal. Under this rubric, the reviewing judge had no basis to determine whether there was substantial evidence to support the decision to terminate the plaintiffs' employment. See G. L. c. 30A, § 14. We do not subscribe to this view. Our conclusion, that the DALA magistrate's initial decision affirming the department's termination order became the final decision of the commission, preserves the DALA magistrate's findings of fact for a substantial evidence review on appeal. A hearing officer's report is an essential component of the record of an administrative adjudicatory

---

[9]Although admittedly an imperfect analogy, a tie vote on an appellate court generally affirms a lower court judgment. See, e.g., *Borden Ranch Partnership* v. *United States Army Corps of Eng'rs*, 537 U.S. 99 (2002) (per curiam); *Serino* v. *Commonwealth*, 397 Mass. 1051 (1986).

proceeding. See Cella, *supra* at § 351, at 657-658. "Massachusetts has generally followed the trend in other jurisdictions in making the hearing officer's or examiner's report a part of the record for purposes of securing judicial review of [S]tate administrative agency adjudications." *Id.* In fact, reviewing judges may not focus on the evidence presented to the appointing authority, but instead must consider the evidentiary record as developed during the de novo proceeding before the hearing officer — here, the DALA magistrate. See *Sullivan* v. *Municipal Court of the Roxbury Dist.*, *supra* at 572; *Leominster* v. *Stratton*, 58 Mass. App. Ct. 726, 732 (2003). Anticipating that we would conclude that the DALA magistrate's findings of fact and decision would be subject to judicial review, the Superior Court judge, in an alternative analysis, determined that the DALA magistrate's decision satisfied the requirements of G. L. c. 30A, § 14. Likewise, we now consider whether the DALA magistrate's decision to affirm the department's termination order was supported by substantial evidence. See G. L. c. 30A, § 14; G. L. c. 31, § 44; Cella, *supra* at § 246, at 510 n.1, and cases cited.

3. *Substantial evidence.* Pursuant to G. L. c. 30A, § 14, and G. L. c. 31, § 44, "[w]e shall uphold an agency's decision unless it is based on an error of law, unsupported by substantial evidence, unwarranted by facts found on the record as submitted, arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." *Fitchburg Gas & Elec. Light Co.* v. *Department of Telecomm. & Energy*, 440 Mass. 625, 631 (2004), quoting *Massachusetts Inst. of Tech.* v. *Department of Pub. Utils.*, 425 Mass. 856, 867-868 (1997). As a general rule, we "must accept the factual determinations made by the agency if [we] find[] they are supported by substantial evidence." *School Comm. of Boston* v. *Board of Educ.*, 363 Mass. 125, 128 (1973). See *Leominster* v. *Stratton*, *supra* at 728, and cases cited. A reviewing judge may, however, take into account the fact that a hearing officer's initial decision became the final decision of the agency by default as opposed to by majority vote when conducting a substantial evidence analysis. See Cella, *supra* at § 352, at 661-663 (reviewing court may afford reduced weight to hearing officer's report where agency rejected it in whole or in part). Irrespective of the commission's voting record,

we "seek[] to uphold the findings of fact made by a hearing officer or examiner based upon the demeanor and credibility of the witnesses whose oral testimony he has personally observed and evaluated." *Id.* at 660. See *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480, 498 (1978); *Leominster* v. *Stratton, supra* at 729. Even "the [commission] may not reject a [hearing officer's] tentative determinations of credibility of witnesses personally appearing." 801 Code Mass. Regs. § 1.01(11)(c)(2).

The plaintiffs' principal contention is that the DALA magistrate erred in crediting the testimony of Sergeant Scott Nedley, an employee of the department who became involved in the altercation between the plaintiffs and the inmate on hearing the inmate's cries for help. Nedley testified that he heard several thuds that sounded like punches, and then heard Mullen say to the inmate that "it hurts to get hit in the kidney." Nedley also testified that he saw McGuiness walk back and forth on the inmate's legs, and later saw Mullen put the inmate in a pressure hold and twist the inmate's restrained wrists. The plaintiffs argue that Nedley's testimony that Mullen punched the inmate was not credible because Nedley did not see, but only heard, Mullen punch the inmate. They also submit that Nedley would not have waited several days to report the incident if stepping on the inmate's legs truly amounted to excessive force, and that Mullen effectively refuted the allegation that he twisted the inmate's wrists with excessive force when he testified that he used no more force than was necessary. Moreover, the plaintiffs claim that Nedley's testimony regarding several details that were not included in the department's incident report demonstrated his lack of credibility as a witness.

The DALA magistrate found Nedley's testimony to be persuasive and credible. She made this determination after reviewing all the evidence in the case and observing Nedley's demeanor firsthand. See *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ., supra*; *Leominster* v. *Stratton, supra.* Her conclusion was justified. First, information obtained through the use of one's ears as opposed to one's eyes is not inherently unreliable. See *Commonwealth* v. *Noble*, 417 Mass. 341, 347 (1994). Second, the DALA magistrate considered Nedley's delay

of several days in reporting the incident and found it reasonable, given his emotional distress following the incident and the fact that McGuiness was Nedley's superior. Third, Sergeant Stephen Kennedy, who was responsible for the department's investigation and whose testimony the DALA magistrate credited, testified that the plaintiffs gave inconsistent and contradictory accounts of their interaction with the inmate over the course of the department's investigation, which cast doubt on the plaintiffs' credibility as witnesses. What is more, the DALA magistrate determined that Nedley had no discernible reason to fabricate his testimony. In fact, reporting the incident was effectively discouraged, as evidenced by Nedley's thirty-day suspension for failing to prevent the abuse. Moreover, there was substantial evidence corroborating Nedley's account of the plaintiffs' use of excessive force against the inmate. Other inmates testified that they heard screams of pain during the altercation involving the plaintiffs, and Kennedy, a close friend of Mullen, testified to his conclusion following an extensive investigation that the plaintiffs violated the department's policy prohibiting the excessive use of force against inmates. Even McGuiness testified that the altercation caused the inmate to yell, "You're killing me. You're hurting me. Get off."

In sum, even accepting that the commission did not adopt the DALA magistrate's findings of fact by majority vote, we nevertheless conclude that there was substantial evidence to support the DALA magistrate's findings of fact and decision affirming the department's termination order.[10] See G. L. c. 30A, § 14. The plaintiffs were not the victims of "political considerations, favoritism, [or] bias." *Falmouth* v. *Civil Serv. Comm'n*, 61 Mass. App. Ct. 796, 800 (2004), quoting *Cambridge* v. *Civil Serv. Comm'n*, 43 Mass. App. Ct. 300, 304 (1997). The department had "just cause" to terminate their employment. See G. L. c. 31, §§ 41, 43.

4. *Conclusion.* Where a hearing officer recommends affirmance of the decision of an appointing authority and the commission

---

[10]The DALA magistrate also concluded that the plaintiffs violated 103 Code Mass. Regs. § 505 (2009) in that they neither monitored the inmate while he was in restraints, sought approval to restrain the inmate for longer than two hours, nor arranged for medical examination of the inmate.

proceedings result in a tie vote, the initial decision of the hearing officer becomes the final decision of the commission. See G. L. c. 31, § 2 (*b*), (*c*); 801 Code Mass. Regs. § 1.01(11)(c). Such a decision is then subject to judicial review. See G. L. c. 30A, § 14; G. L. c. 31, § 44. In accordance with the Superior Court judge's alternative analysis, we conclude that the department's decision to terminate the plaintiffs' employment was fully supported and warranted by the facts of this case.

*Judgment affirmed.*