Curran, Dennis J., J.
Introduction
When Jeremy LaFlamme applied for a job as a firefighter with the Town of Shrewsbury, he claimed residency hiring preference. The Town found him not so entitled. So too, after a hearing, did a magistrate with the Division of Administrative Law Appeals. Indeed, the Civil Service Commission adopted the magistrate’s Findings of Fact as to residency, but in a curious turn and divided vote, reversed the magistrate’s decision.
The Town of Shrewsbury has moved for judgment on the pleadings under Mass.R.Civ.P. 12(c), alleging that the Civil Service Commission’s decision: (1) is not supported by substantial evidence; and (2) is based upon errors of law. The state defendants have cross-moved for judgment on the pleadings, arguing, inter alia, that the Civil Service Commission’s decision was supported by substantial evidence.
For reasons that follow, the Town’s motion is ALLOWED.
I. BACKGROUND
Jeremy LaFlamme applied for a position of firefighter with the Town of Shrewsbury claiming to be a resident. Such status would entitle him to hiring preference under G.L.c. 31, 58. That statute requires that LaFlamme reside in Shrewsbury for one year before the firefighter’s civil service examination. The Town Manager, who was required to certify La Flamme’s residency, authorized the town police department to investigate his claim of residency. After the investigation, the Manager determined that LaF-lamme was not entitled to hiring preference:
Mr. LaFlamme listed himself as a resident of Shrewsbury residing at 35 Grace Avenue, Shrews-bury, MA 01545 ... I believe that Mr. LaFlamme for the period June 10, 2005 to June 10, 2006 resided at 401A Cotuit Road, Marstons Mills, MA 02648. The 35 Grace Avenue address is the address of Mr. LaFlamme’s parents and his childhood home.
The 401A Cotuit Road, Marstons Mills, MA 02648, address was not listed on Mr. LaFlamme’s application with the Town but does appear on an application he filed with the West Barnstable Fire Department and on a resume submitted to the Town of Barnstable.
LaFlamme is a member of the West Barnstable Fire Department which by its nature requires residency within a reasonable response distance of the West Barnstable Fire Headquarters.[1]
(Administrative Record, p. 020. Letter dated December 17, 2007 from Shrewsbury Town Manager to Civil Service Commission.)
One of the minimum requirements of the West Barnstable Fire Department is that the member “. . . must live within a reasonable distance of the [ ] Fire Headquarters (4 road miles [later reduced to 3.5 road miles] or closer is preferred).” (Administrative Record, pp. 023,062).[2] LaFlamme’s Marstons Mills apartment is about two miles from the West Barnstable firehouse; his Shrewsbury address is some 94 miles away. (Administrative Record, Volume II, pp. 56-57.)
After the investigation revealed these facts, the Town refused to certify LaFlamme as entitled to residency hiring preference. LaFlamme appealed to the Massachusetts Civil Service Commission.
The Commission referred the case to the state Division of Administrative Law Appeals. A DALA magistrate conducted a hearing on April 2, 2008. The only witness who testified at that hearing was Jeremy LaFlamme. After the hearing, the magistrate issued detailed Findings of Fact and a recommended decision with the Commission. The magistrate upheld the decision of the Town that LaFlamme had not, in fact, resided in Shrewsbury during the one-year period between June 10, 2005 and June 10, 2006, and as a result, did not merit hiring preference.
On August 7, 2008, the Commission, by a vote of 3 to 2, adopted the magistrate’s Findings of Fact. Despite doing so, however, they reversed her decision. On their own, the Commission decided that LaFlamme had resided in Shrewsbury during the relevant period. They ordered his name restored to the existing and/or next certified eligibility list.
The Town filed a Complaint with this Court and now brings this motion for judgment on the pleadings.
*114 II. DISCUSSION
The standard for review is whether there is substantial evidence for the Civil Service Commission’s decision. G.L.c. 30A, 14(7) (e). In this case, the Commission disagreed with a magistrate’s Findings, after a hearing. Those Findings rested on a resolution of credibility questions, and as such, are entitled to substantial deference. Vinal v. Contributory Retirement Appeal Board, 13 Mass.App.Ct. 85, 102 (1982).
In this case, the magistrate’s Findings were based upon the credibility of one witness — Jeremy LaFlamme. It was the magistrate — not the Commission — who questioned him in person and was in a position to assess his credibility. At that hearing, LaFlamme admitted that he had been renting and living at a Marstons Mills apartment since May 2004. (Administrative Record, Volume II, p. 42.) The magistrate also considered LaFlamme’s written and oral admissions against interest. LaFlamme admitted that the police report authorized by the Town Manager was accurate. (Administrative Record, Volume II, p. 048.) That report confirms that although he lived in Marstons Mills, he failed to list that address on his Shrewsbury firefighter application. (Administrative Record, Volume II, pp.041,048-49.) Conversely, LaFlamme listed his Marstons Mills address — but not his Shrews-bury address — on his job application with the West Barnstable Fire Department on June 4, 2004 (Administrative Record, pp. 053-056). That application contains a certification in which LaFlamme attested that:
I hereby certify that the statements, answers and information contained in this application are made by me and are true and correct. Signed under the pains and penalties of perjury.
(Administrative Record, p. 056.)
More importantly, LaFlamme listed the Marston Mills address — but again, not his Shrewsbury one — on his job application with the Hyannis Airport, submitted on May 30, 2006. (Administrative Record, p. 151). This was the very week before he took the firefighter civil service examination. (Administrative Record, Volume II, p. 52.)
LaFlamme has admitted that while he was aware of the residency hiring preference when he filled out his application for the Shrewsbury firefighter position, but failed to list his Marstons Mills address, because:
... I didn’t think of it at the time when I was filling it out.
(Administrative Record, Volume II, p. 66.)
To compound LaFlamme’s complicity, he signed a Certification at the end of the Shrewsbury job application attesting that:
I have read each question asked of me and understand each question. My statements on this form, and any attachments to this form . . . are true, and correct to the best of my knowledge and belief and are made in good faith.
(Administrative Record, p. 052.)
He also swore that his application was ”... true and complete,” and that:
I understand that false or misleading information given herein . . . will result in my being disqualified from further consideration and/or termination from employment with the Shrewsbury [Police] (sic) Department.
(Administrative Record, p. 069.)
As demonstrated by the magistrate’s recommended decision, this case is, ultimately, one of credibility. Given LaFlamme’s multiple prevarications, the Commission is duty-bound to accord substantial deference to the magistrate on the issue of witness credibility. Vinal at 102. Boston Superior Officers Federation v. City of Boston, 414 Mass. 458, 465 (1993). In Board of Selectmen of Dartmouth v. Third District Court of Bristol, 359 Mass. 400, 403 (1971), the Supreme Judicial Court elaborated on the reasons for such deference:
. . . [Findings based on oral testimony will not be reversed unless plainly wrong. The reason for this rule is that the . . . [officer] who has heard the testimony and seen the witnesses face to face has a better opportunity for determining the credibility of their conflicting statements than can possibly arise from reading a record; he “has a great advantage in a search for the truth over those who can only read their written or printed words,” citing Mayor of Beverly v. First District Court of Essex, 327 Mass. 56, 61 [(1951)].
Moreover, the Civil Service Commission must affirm an appointing authority’s [here, the Town of Shrews-buiy] decision unless there was no “reasonable justification for the action taken.”[3] City of Cambridge v. Civil Service Commission, 43 Mass.App.Ct. 300, 304 (1977). “Reasonable justification” is defined as “. . . adequate reasons sufficiently supported by credible evidence, when weighed by an unprejudiced mind, guided by common sense and by correct rules of law.” Selectmen of Wakefield v. Judge of District Court of Eastern Middlesex, 262 Mass. 477, 482 (1928), and Commissioners of Civil Service v. Municipal Court of the City of Boston, 359 Mass. 214 (1971). The Town had reasonable justification for its decision. Its decision was well supported by a preponderance of the evidence. Under these circumstances, the Commission had no legal authority to reverse the Town’s decision and no right to ignore the magistrate’s recommended decision.[4] The magistrate made Findings of Fact and “. . . applied those facts to the relevant law.” After doing so, she concluded that the Town had demonstrated by a preponderance of the evidence that LaF-lamme did not reside in Shrewsbury for the year preceding the civil service examination in June 2006. Her decision ought not be disturbed.
The magistrate properly applied G.L.c. 31, 58, which sets forth the residency preference standard as requiring:
. . . [the] place [ment] of the names of all persons who have resided in said city or town for one year *115 immediately prior to the date of examination ahead of the name of any person who has not so resided.
(Emphasis added.)
Further, “residence” means . . the physical location of the employee’s house or other dwelling place.” Doris v. Police Commissioner of Boston, 374 Mass. 443, 444 (1978).
The Commission chose to ignore this longstanding definition of residence and instead, embarked on a creative course, defining residence as whether the job applicant “intended [the address] to be your permanent residence.” (Emphasis added, Administrative Record, p. 281.) Reduced to its essence, the Commission has now deemed that a “temporaiy address” is sufficient to trigger hiring preference for coveted police and firefighter positions — an interpretation that is facially absurd. The Commission has utterly ignored the legal standard of actual physical residence and instead, engaged in a result-oriented decision.
Moreover, the Commission applied a de novo standard of review, even though it heard no evidence. After adopting the magistrate’s Findings of Fact, it ignored them. The clear evidence was that LaFlamme physically resided in a location other than Shrewsbuiy for the year before the examination. The Commission did not find that LaF-lamme had an “actual physical residence” in Shrewsbuiy, because it could not. Instead, the Commission, bound by the magistrate’s factual finding, has turned the hiring preference statute’s definition of residency on its head. The Commission claimed such residence to be “. . . [a] long-term intention of continuing it as [a] place of residence. ” An applicant need show only indicia “... normally associated with and indicative of residency.” (Administrative Record, p. 283, Decision of the Civil Service Commission dated August 7, 2008.) In this statutoiy context, residency so defined is just plain wrong.
In the past, the Civil Service Commission well knew the correct legal definition of residency as used in the hiring preference statute, demonstrated by the following three points.
First, in the Commission’s own decision in Crete v. City of Lawrence, 18 Mass. Civil Service Review 22, 23 (2005), quoting Doris at 445, it so defined residency:
. . . [RJeside [means] the physical location of the employee’s house or other dwelling place.
Second, the Civil Service Commission’s own Verification of Applicant’s Residence Preference form, which it requires appointing authorities to complete, defines residence in a manner at variance with the Commission’s revisionist interpretation:
. . . [P]ursuant to G.L.c. Chapter 31, Section 58, [a job applicant] [must] [ ] maintain residence in the Appointing Authority's community for a full year preceding the date of the examination. Residence means the principal place of domicile of the applicant. Principal place of domicile means an applicant’s true, fixed and permanent home.
(Emphasis added, Administrative Record, p. 021, “Appointing Authority’s Verification of Applicant’s Claim for Residence Preference Statement.”)
Finally, the Civil Service Commission revealed its knowledge and acceptance of the statutoiy definition of residence when, in the past, it detailed certain factors which disqualify ajob applicant from asserting residency preference. Either factor disqualifies LaFlamme:
. . . Applicants who have had a break in residence or have moved from one community to another within the twelve month period preceding the date of the examination will not be entitled to claim residence preference in any community.
(Announcement No. 8012.)
The Commission now argues that a miscellany of LaFlamme’s nexuses to Shrewsbuiy, past and present, satisfies the residency preference law. But the Commission misses the point. To obtain residency hiring preference, the issue is simple: whether LaF-lamme actually resided in Shrewsbury for the one-year period before the firefighter’s civil service examination.
The magistrate correctly pointed out that, notwithstanding LaFlamme’s use of his parents’ home address[5] for his driver’s license, pilot’s license, bank accounts, car registration and insurance and other matters, he physically resided in Marstons Mills from June 10, 2005 through June 10, 2006. At the hearing, LaFlamme admitted — under oath — that he spent more than one-half of the year (about 205 days) from June 2005 to June 2006 living in Marstons Mills.[6] (Administrative Record, Volume II, p. 42):
I consider Shrewsbuiy to be my permanent residence],] however I work away from home on Cape Cod. As you can imagine!,] a drive from Shrewsbuiy to the Hyannis area on Cape Cod would use a tremendous amount of gas in a Jeep Cherokee. I am a pilot with Cape Air/Nantucket Airlines, an operations specialist part-time with the Town of Barnstable, and a call firefighter with the West Barnstable Fire Department. As a result!,] 1 stay in a small studio apartment in Marstons Mills. I did use this address to gain employment with the West Barnstable Fire Department I did not place this address on an application with the Town of Shrewsbuiy because I do not consider it to be a place that I live.
(Emphasis added, Administrative Record, p. 002. Letter of Jeremy LaFlamme to the Civil Service Commission.)
LaFlamme concluded:
In the Town of Shrewsbury I unfortunately am not a permanent fixture. I would veiy much like to be around more often but it is still where I consider to be my home.
(Administrative Record, p. 002.)
Residency, as envisioned by the hiring preference statute, is not simply a state of mind.
*116 The Commission also found — anew—that LaFlamme “... was employed in a series of short-term or temporary jobs, mainly on Cape Cod and used a temporary address (tenant at will) to be nearby those jobs.” This selective Finding of Fact is inconsistent with magistrate’s more extensive Findings which the Commission adopted, but then chose to ignore. Those Findings reveal that on May 20, 2006, when LaFlamme applied for a job in the town of West Barnstable, he listed his address on the application as “Marstons Mills.”
Just a week later, on June 5, 2006, LaFlamme took the civil service examination and insisted on residency preference from Shrewsbury. On August 9, 2006, in his application with Shrewsbury, he claimed a Shrewsbury address, failing to mention his Marstons Mills residence. On August 11, 2006, he was hired as an operation specialist at the Barnstable Municipal Airport. His job application listed Marstons Mills as his address, and was silent about any residential address in Shrewsbury. The magistrate recognized these inconsistent positions when she declared:
[LaFlamme] readily used the Marstons Mills address for purposes of obtaining employment on Cape Cod. He did not hesitate to omit mention of the Shrewsbury address. During the same period, he utilized his parents’ address when he applied for employment in Shrewsbury in early 2006. He can’t have it both ways. He can’t reside in two places.
(Administrative Record, pp. 214-15, Recommended Decision dated June 16, 2008.)
The magistrate’s Finding of Fact that “La Flamme was a resident of Marstons Mills,” adopted by the Commission, precluded that agency from finding that LaFlamme resided in Shrewsbury from June 2005 to June 2006.
III. CONCLUSION
The Commission failed to follow G.L.c. 31, 58 and Doris v. Police Commissioner of Boston, 374 Mass. 443 (1978), which require actual physical residence during the year before the date of the examination to be eligible for preferential hiring status.
The magistrate’s Findings of Fact succinctly state the matter:
He can’t have it both ways, he can’t reside in two places.
There was, indeed, reasonable justification for the Town’s decision. There was reasonable justification for the magistrate’s recommended decision. The Commission’s decision, in attempting to gloss over both the facts and the law to reach a different conclusion, was erroneous as a matter of law.
Such an effort cannot succeed.
ORDER
Judgment shall enter for the Town of Shrewsbury adopting the magistrate’s Recommended Decision, reversing the Commission’s decision and dismissing LaFlamme’s appeal.

 Marstons Mills and West Barnstable are villages or neighborhoods within the Town of Barnstable.

The West Barnstable Fire Chief later “clarified” this policy, at Jeremy LaFlamme’s request. In the midst of LaFlamme’s civil service litigation, and in response to his written entreaty, the chief opined that the department does not have a “strict residency” requirement; rather, firefighters must live a “reasonable distance” from the station “(which is] determined by looking at the individual facts and circumstances.”

The Town argues that because Mr. LaFlamme’s appeal was filed early, before a final decision had been entered, it is entitled to no effect. Such a claimed procedural defect, however, ought not to deter consideration of this case on the merits. The point is that LaFlamme promptly (albeit early) registered his opposition to the Town’s decision and filed a Notice of Appeal, advising all parties that he intended to pursue his appellate rights.
Moreover, the Town waived any procedural objection by entering into the Stipulation of Facts filed with the Civil Service Commission: “LaFlamme has appealed the decision of the Appointing Authority that has led to his bypass for employment with the Shrewsbury Fire Department.” (Administrative Record, pp. 118-20, Stipulation 19.)

That two members of the Commission (including its Chairman) understood these legal principles is noteworthy.

LaFlamme's father, Gerald Francais LaFlamme, is the Fire Chief for the Town of Shrewsbury. (Administrative Record, p. 045. Town of Shrewsbury Fire Department Application of Jeremy LaFlamme, section 14.)

The magistrate found that “[LaFlamme] worked two jobs on Cape Cod, full time plus, during that period. He also stayed on the Cape during many of his off hours in order to socialize.” (Administrative Record, p. 214.)